HORACE C. NICHOLS *vs.* DAVID ROSENFELD.

MEREDITH W. PALMER & another *vs.* SAME.

Suffolk.   March 18, 1902. — May 23, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction.   Agency.   Evidence,* Conversations between husband and wife.
   *Deed,* Delivery.   *Alteration of Instruments.*

*Semble,* that one seeking equitable relief on a charge of fraud must maintain his
   case on that ground or lose it.
Testimony by a wife that her husband acted by her authority is not necessarily
   made incompetent by her statement that her conversations with him were
   private.
Where a loan is to be made upon a mortgage, and a time is appointed for passing
   the papers, and the mortgage and note are handed to the mortgagee's lawyer
   and remain in his custody for a day before the time fixed for passing the papers,
   there is no delivery in the technical sense until that time arrives, and an al-
   teration in the mortgage note made before the papers are passed is made before
   delivery.

HOLMES, C. J.   These are two bills in equity seeking to
set aside a mortgage on the ground that the mortgage note
was altered fraudulently after delivery.   The cases come be-
fore us on frivolous bills of exceptions concerning which per-
haps it would be enough to say that in this court a charge of
fraud is regarded as something more serious than a rhetorical
embellishment, that if a man puts his case on that ground
he must maintain it on that ground or lose it, and that the
plaintiff's own evidence made it abundantly clear that if there
was any fraud it was not on the defendant's side.   But we
will deal with the exceptions so far as they seem to present
any question.

   The case presents an attempt by the plaintiffs to take advan-
tage of a slip in the original writing of the mortgage note by
which the interest was made two per cent per annum instead of
two per cent per month.   The mortgagor was a Mrs. Jeffrey,
and she and her husband signed the mortgage note.   Her hus-
band conducted the transaction, and one Perkins acted for him

and for her.  Jeffrey and Perkins both understood the rate of interest to be two per cent a month.  Before passing the papers the defendant's lawyer discovered the mistake in the note, called Jeffrey's attention to it and corrected it with his consent.  The papers then were passed, and the defendant advanced his money, which there has been no offer to return.  The mode in which the plaintiffs sought to accomplish their effort was by excluding evidence of authority from Mrs. Jeffrey to make the alteration.  After she had testified that her husband conducted all the negotiations for her and had all authority, she was asked by the plaintiffs' lawyer whether she had given any authority in writing, to which she replied that he did as he liked, she had nothing to say about it.  In answer to a further question she said that she was alone with her husband when she talked the matter over.  A motion then was made that the evidence as to her husband's acting for her be ruled out, and other exceptions were taken upon the same principle, which was of course that it sufficiently appeared that the husband's authority was given only in private conversation.  *Brown* v. *Wood*, 121 Mass. 137.  *Commonwealth* v. *Hayes*, 145 Mass. 289, 293.  *Commonwealth* v. *Cleary*, 152 Mass. 491.  But such is not the fact.  Such a conversation is not necessarily private.  There is no presumption one way or the other.  The judge may have disbelieved Mrs. Jeffrey's statement.  But if he believed it fully, her account implied a course of overt acts which was not private, and further an assumption by her husband assented to by her without words that he was to manage the whole affair.  See *Anderson* v. *Ames*, 151 Mass. 11; *Jefferds* v. *Alvard*, 151 Mass. 94; *Dyer* v. *Swift*, 154 Mass. 159, 162; *Beston* v. *Amadon*, 172 Mass. 84.  Furthermore, as we have remarked, she accepted the money upon the contract as it now stands, and so far as appears still has it.

The evidence of the authority of Perkins was indisputable when that of Mr. Jeffrey was established.  Indeed there was evidence from Jeffrey not objected to that Perkins acted for him and his wife.

Not only was the judge warranted in finding as he did that the note was changed before delivery with the consent of the mortgagor's agent and therefore that there had been

no alteration of the note, but it would have been impossible to come to any other conclusion. In view of this finding, rulings as to the effect of alteration properly were refused. We think it unnecessary to say more, or indeed so much as we have said to justify the refusal of rulings that the plaintiffs were entitled to recover or that in case of redemption the defendant was entitled only to two per cent a year. But we may mention that if, as would seem from the defendant's lawyer's testimony, the mortgage and note were in his custody for a day before the time appointed for passing the papers, it would be found, as a matter of course, that he did not hold them as operative instruments, or in the defendant's name. See *People's National Bank* v. *Freeman's National Bank*, 169 Mass. 129, 133; *Shurtleff* v. *Francis*, 118 Mass. 154; *Brackett* v. *Barney*, 28 N. Y. 333; *Ford* v. *James*, 2 Abb. App. 159; *Curry* v. *Colburn*, 99 Wis. 319; *Watkins* v. *Nash*, L. R. 20 Eq. 262. This is not a case of an attempted delivery in escrow to the defendant's attorney followed by a transfer to a bona fide purchaser, like *Hubbard* v. *Greeley*, 84 Maine, 340. There was no delivery in the technical sense until the time fixed for passing the papers.

The bill which was dismissed was dismissed rightly.

*Exceptions overruled; bill dismissed.*

*J. B. Dixon*, for the plaintiffs.

*L. L. G. DeRochemont*, (*J. F. Libby* with him,) for the defendant.