S. Adelaide Kidder *vs.* Addie Greenman & others.

Suffolk.   May 9, 1932. — September 9, 1933.

Present: Rugg, C.J., Wait, Field & Donahue, JJ.

*Contract,* What constitutes, Ratification, Cancellation. *Evidence,* Extrinsic affecting writing, Presumptions and burden of proof. *Equity Pleading and Practice,* Bill, Decree. *Equity Jurisdiction,* Cancellation of unauthorized instrument in writing, Laches. *Agency,* Ratification.

When a lease of real estate, incomplete in a material particular, is signed by one party thereto and completed by the other to whom it has been entrusted in its incomplete condition for completion, evidence is ad-

missible, at the hearing of a suit in equity for cancellation of the lease, to show that the instrument was completed in an unauthorized manner; and, as between the parties, in the absence of estoppel, a lease so completed, although without fraud, does not bind the party who signed it when it was incomplete, for it is not his contract.

In a bill in equity by the lessee named in a lease of real estate against the lessor and an agent who acted for the lessor, the plaintiff sought cancellation of the lease and averred that the instrument, incomplete in certain particulars, had been signed by the plaintiff and delivered to the agent with an understanding that it should be completed to be a lease for thirteen months, that the agent did not so complete it, but, in breach of such understanding "did wrongfully and fraudulently fill in certain blanks in said lease so as to make it in form a thirteen month lease and thereafter a lease from year to year." *Held*, that

(1) Even if the word "fraudulently" amounted to more than a mere characterization of the agent's conduct, it merely left the bill one with a double aspect, and the suit could be maintained if wrongful, because unauthorized, completion of the lease by the agent was proved, although it also was found that the defendants had no fraudulent intent;

(2) The evidence to prove such unauthorized completion was admissible, even if no such fraud was shown.

It being shown in the suit above described that the lease was completed by the defendant agent in a manner which was wrongful because unauthorized by the plaintiff, and that the suit was brought after the expiration of the operative period of the lease as it should have been completed, so that there was no occasion for its reformation, the suit could be maintained to cancel the lease and to enjoin the prosecution of actions at law to enforce its provisions.

The rule, that a suit in equity seeking relief on the ground of fraud cannot be maintained if fraud is not proved, even though facts are found which would entitle the plaintiff to relief on another ground if fraud were not alleged, does not apply to a bill framed with a double aspect where, in one aspect thereof, fraud is neither alleged nor essential to relief.

In a suit for cancellation of the character above described, the plaintiff is required to prove only by a preponderance of the evidence, and not beyond a reasonable doubt, his allegations on both the issues, whether the instrument was in an incomplete form when he executed it and delivered it to the defendant, and whether the defendant completed it in an unauthorized manner.

In the suit above described, it appeared that, after the instrument was completed by the agent, it was mailed to the plaintiff, who did not look at it "except to slit the envelope and see it contained a lease," and did not examine it until about a month after the date when, by its terms as so completed, he should have given notice to the defendant to prevent it from running a second year and shortly after the provision for renewal first was called to his attention; that two months later he displayed an interest in having the real estate rented and advertised it; and that the suit was not commenced until three to four months after he discovered the true facts as to the form in which

the lease was completed and until after the expiration of the original thirteen months of its term. A master who heard the suit found that he did "not consider" that "to be an unreasonable delay sufficient to constitute laches." *Held,* that

(1) Conduct of the plaintiff before he had knowledge of the breach of his understanding with the agent did not show ratification of the agent's act, the plaintiff not having wilfully or deliberately ignored the contents of the lease in its completed form;

(2) In the circumstances, the doctrine, that a person who accepts an instrument, or takes title thereunder, without reading it or otherwise informing himself of its contents is charged with knowledge of such contents, was not applicable; and therefore acceptance by the plaintiff of the completed lease did not amount to a ratification of the agent's act of completing it in an unauthorized manner;

(3) The unauthorized act of the agent was not ratified by the plaintiff's occupation of the premises on the theory that he accepted a benefit resulting from such unauthorized act, because he received no benefit by reason of the agent's unauthorized act beyond what he would have received if the agent had acted as authorized;

(4) The instrument being an indenture, and in fact executed by both parties, and the execution by the plaintiff being upon a condition not performed by the lessor's agent as authorized by the plaintiff, no acceptance by the plaintiff of its final terms could be implied by his acceptance of the instrument or his occupation during the term to which he orally had agreed;

(5) Conduct by the plaintiff after he learned of the agent's breach of the understanding as to completion of the lease did not amount to acquiescence in the lease in the form in which the agent had completed it without the plaintiff's authority;

(6) The finding, that the plaintiff's delay in commencing the suit did not constitute laches, was not inconsistent with other facts found, and was warranted;

(7) A final decree granting the relief prayed for by the plaintiff was affirmed.

BILL IN EQUITY, filed in the Superior Court on October 21, 1931, and afterwards amended, described in the opinion.

The suit was referred to a master. Findings by him are described in the opinion. By order of *Qua, J.,* there were entered an interlocutory decree overruling exceptions by the defendant to the master's report and confirming the report, and a final decree granting to the plaintiff the relief sought. The defendants appealed.

*H. B. Ehrmann, (B. A. Sugarman* with him,) for the defendants.

*R. H. Peacock, (M. L. Hussey* with him,) for the plaintiff.

FIELD, J.   This is a suit in equity brought by the person named as lessee in the lease of an apartment in an apartment house owned by the defendant Greenman against her as lessor and the defendants McNally and Stucklen, her agents for the purpose of leasing apartments, for the cancellation of the lease and for an injunction against the prosecution of actions at law to recover rent thereunder.

Attached to the bill of complaint as amended is an alleged copy of the lease, partly printed and partly typewritten, which purports to be a lease in duplicate of the apartment for thirteen months from September 1, 1930, and "thereafter from year to year until one of the parties hereto shall on or before the first day of June in any year give to the other party written notice of his intention to terminate this Lease on the thirtieth day of the following September."   The bill as amended alleges that the plaintiff and the defendants McNally and Stucklen entered into an oral arrangement for a lease to run from September 1, 1930, to October 1, 1931, that these defendants presented to the plaintiff for execution and delivery by her a lease which was "incomplete, among other things, as to the length of term of said lease," that "the plaintiff executed and delivered said incomplete lease with the understanding and upon the condition that the lease was to be completed" by these defendants "in accordance with the terms of their mutual oral arrangement," but that the defendants "did not complete said lease in accordance with the terms and conditions of said oral understanding and arrangement, but thereafter, in breach of said oral understanding and arrangement, did wrongfully and fraudulently fill in certain blanks in said lease so as to make it in form a thirteen month lease and thereafter a lease from year to year." There are also allegations that the plaintiff vacated the apartment on or about September 30, 1931, the rent being paid in full to September 30, 1931, and allegations that the defendant Greenman had brought an action at law to recover rent for the month of October, 1931, and was going to bring actions for subsequent months up to and including September, 1932.

The defendants in their answer as amended allege that the defendant Greenman was entitled to rent under the lease for the month of November, 1931, and would become entitled to rent thereafter until the termination of said lease, and an attorney's fee for the collection thereof, and prayed that the plaintiff be ordered to pay these amounts.

The defendant Greenman was enjoined until the further order of the court from further proceeding with her action at law referred to in the bill of complaint and the case was referred to a master. By an interlocutory decree the defendants' exceptions to the master's report were overruled and the report was confirmed. A final decree was entered cancelling the lease and enjoining the prosecution of the action at law described in the bill of complaint and the institution or prosecution of "any action or proceeding for the purpose of collecting rent under the said lease, and from endeavoring otherwise to collect any rent thereunder." The defendants appealed from this interlocutory decree and from the final decree.

The master found the following facts: The defendant Greenman was the owner of the apartment house in question and the defendants McNally and Stucklen, copartners, were her agents for the purpose of leasing apartments therein, the defendant Stucklen being particularly in charge.

On August 22, 1930, the plaintiff, accompanied by her two daughters, had an interview with the defendant McNally, expressed an interest in the apartment and said she would want a one year lease, and certain repairs. McNally said he would speak to Stucklen, that a one year lease was not customary but that he thought Stucklen would agree. The plaintiff asked for and obtained from McNally a blank form of lease. It contained in the printed part the provisions for continuation from year to year and notice to terminate to which the plaintiff now objects. The plaintiff took this form of lease to her banker and had him examine it for her.

No definite agreement was made before August 25, 1930. On that day the plaintiff, again accompanied by her two daughters, had an interview with the defendant Stucklen.

The plaintiff and her daughters proposed certain repairs. He said that they were asking too much on a one year lease. The plaintiff "said she didn't want a longer term as she expected to travel beginning in October, 1931, and would have to go without some of the repairs. She further said she didn't want to be bothered with giving notice because she expected to travel while living in Boston." The extent of the repairs to be done was agreed upon, the lease was presented to the plaintiff for her signature, the plaintiff and her daughters read it carefully and it was then signed by her. The plaintiff and her daughters in their testimony before the master were positive that the blank spaces in the printed clause hereinafter set forth were not filled in when the plaintiff signed it; the defendant Stucklen and his stenographer were positive that they were filled in. The master, upon this conflicting testimony, for reasons stated, including the fact found by him that the term to be filled in had not been determined until the lease was signed by the plaintiff, found "that the spaces in question were blank when the lease was signed by the plaintiff." The printed clause was as follows (the words in italics not then being filled in): "To have and to hold, for the term of *one (1) year and one (1) month* from the *first* day of *September* in the year nineteen hundred and *thirty* until the *thirtieth* day of *September* in the year nineteen hundred *thirty-one* and thereafter from year to year until one of the parties hereto shall on or before the first day of *June* in any year give to the other party written notice of his intention to terminate this Lease on the *thirtieth* day of the following *September* in which case the term hereby created shall terminate in accordance with such notice."

The master states, "I find that the rest of the blanks in the lease were at that time completely filled except for the clause in question and the spaces on the back. Plaintiff made no comment upon the blanks for the reason that she believed Stucklen understood her desire for a one year term without any provision for continuation from year to year. She gave no definite instructions as to completing or altering the lease and the defendant made no promises

except such as may be gathered from the talk as above reported. At the end of the conference Stucklen said that plaintiff might wish to remain another year. She said that if she did she could sign another lease. After the lease was signed Stucklen said that if plaintiff had no objection he would have the lease run to October 1, 1931, instead of September 1, 1931, as the renting season began on October 1. Plaintiff said she wanted a twelve months' lease but had no objection to extending the term to October 1. Stucklen then said he would have the lease completed and sent to the owner for signature. After plaintiff and her daughters had left Stucklen caused the blanks to be completed in the clause in question, and had the spaces on the back of the lease filled in as they now appear and sent the lease to the owner's son for the owner's signature. The leases [were] returned with the owner's signature on or before August 27, 1930. On August 27, 1930, Stucklen mailed the completed leases to plaintiff addressing them to her at Andover, Mass. They reached plaintiff . . . some time between September 1 and September 4, 1930."

The lease sent to the plaintiff was on its face in the form above set forth with the words in italics filled in in typewriting and on its back in the following form (the words in italics being typewritten in spaces left blank in the printed form): "From *Addie M. Greenman*  To *S. Adelaide Kidder*  Term *one (1) year and one (1) month*  Beginning *September 1, 1930*  Expiring *September 30, 1931*  Notice required *June 1*  Rent per annum *$2160*  Payable *monthly advance*  Building *18 West Cedar St. 108 Mt. Vernon St.*"

The master's conclusion on this branch of the case is as follows: "I find that defendants made no misrepresentations of existing facts to plaintiff upon which plaintiff relied when signing the lease. I find that the plaintiff, although the defendant Stucklen was an agent for the defendant Greenman, relied upon him and entrusted him with the task of completing an incomplete lease; that he completed the lease without removing the clauses as to continuation and notice, and in so doing he failed to abide by the oral arrangement with the plaintiff for a lease for

the term of thirteen months only which he knew or should have known he had made with the plaintiff. I find no fraudulent intent existed on the part of any of the defendants."

The "Plaintiff did not look at the lease" at the time she received it "except to slit the envelope and see it contained a lease," and did not examine it at all until early in July, 1931. Late in the preceding month the plaintiff in a talk with the janitor received her first intimation that she might be held for another year. As a result of this talk Stucklen wrote the plaintiff a letter on June 30, 1931, stating that the lease was renewed for another year on June 1 and was in full force and effect until October 1, 1932. Thereafter there were communications between the plaintiff and Stucklen. The plaintiff, in September, displayed an interest in having the apartment rented and advertised it. She instituted no proceedings to cancel the lease for a period of three to four months after discovering the true facts as to the form in which it was executed, but the master states that he does "not consider this to be an unreasonable delay sufficient to constitute laches."

The plaintiff remained in occupation of the apartment until September 28, 1931, when she moved out and notified Stucklen that she was doing so. The rent was paid regularly from September 1, 1930, to September 30, 1931, but the rent for October and November, 1931, is unpaid.

First. The interlocutory decree overruling the defendants' exceptions and confirming the master's report was proper.

The defendants' exceptions were (a) to the admission by the master, over the defendants' objection, of testimony of the plaintiff and her daughters to conversations between them and the defendants McNally and Stucklen, prior to the execution of the lease, "without having made a preliminary finding of fraud in the execution thereof," (b) to the refusal of the master, at the close of the hearing, although no such finding has been made, to strike out such testimony at the defendants' request, and (c) "Because, although the master did find that the lease as delivered was complete in

all its terms, and that there had been no fraud practised upon the plaintiff, the master made the further finding that the defendant Stucklen had failed to abide by an oral arrangement with the plaintiff concerning the terms of said lease which latter finding contravenes the so called parol evidence rule."

It is true that evidence of a previous oral arrangement between the parties to a written lease would not have been admissible to vary the terms thereof and if admitted, even without objection, could not be used for that purpose. *O'Malley* v. *Grady,* 222 Mass. 202. *Khederian* v. *John T. Connor Co.* 262 Mass. 29, 33. But when a lease incomplete in a material particular is signed by one party thereto and completed by the other to whom it has been entrusted in its incomplete condition for completion, evidence is admissible to show that the instrument was completed in an unauthorized manner, and, as between the parties, in the absence of estoppel, a lease so completed, though without fraud, does not bind the party who signed it when it was incomplete for it is not his contract. *Osgood* v. *Stevenson,* 143 Mass. 399, 401. *Smith* v. *Jagoe,* 172 Mass. 538, 541. See also *Fay* v. *Smith,* 1 Allen, 477; *Graham* v. *Middleby,* 185 Mass. 349, 354. In the present case there was evidence before the master, and he found, that the lease was incomplete in respect to the term for which it was to run when the plaintiff entrusted it to the defendant Stucklen, the agent of the defendant Greenman, to be completed. Clearly the term for which the lease was to run was a material particular. It follows, therefore, that neither the admission of evidence of the conversations, nor the finding that the defendant Stucklen had failed to abide by the oral arrangement violated the parol evidence rule.

Nor was either the admission of the evidence or the finding objectionable because of the absence of a finding of fraud. The bill as amended contains the allegations that "the defendants McNally and Stucklen did not complete said lease in accordance with the terms and conditions of said oral understanding and arrangement, but thereafter, in breach of said oral understanding and arrangement, did

wrongfully and fraudulently fill in certain blanks in said lease so as to make it in form a thirteen month lease and thereafter a lease from year to year." If the word "fraudulently," as here used, is disregarded the bill alleges wrongful, because unauthorized, completion of the lease. And the use of the word "fraudulently" does not eliminate this allegation from the bill. Even if, as we do not decide, this word amounts to more than a mere characterization of the defendants' conduct, adding nothing to the averments of fact in the bill (compare *Garst* v. *Hall & Lyon Co.* 179 Mass. 588, 590, *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73), and has the effect of bringing into the bill an allegation of fraudulent completion of the lease, the allegation of wrongful, because unauthorized, completion remains in the bill, and the bill assumes a double aspect. See *Long* v. *Athol*, 196 Mass. 497, 500; *Chinese American Restaurant Corp.* v. *Finigan*, 272 Mass. 360, 364. The evidence admitted and the findings made were material upon the aspect of the bill alleging unauthorized completion of the lease even though fraud was not proved.

No reason for refusing confirmation of the master's report not covered by the exceptions is disclosed by the record or urged by the defendants.

Second. The final decree was proper.

Cancellation of the lease because it was completed without authority, and injunction against prosecuting actions at law thereon are within the scope of the bill. Moreover, cancellation of an instrument invalid because unauthorized is within the jurisdiction of a court of equity. See *Nickerson* v. *Swett*, 135 Mass. 514, 518; *Williams* v. *United States*, 138 U. S. 514, 517; *Wood* v. *Hubbell*, 10 N. Y. 479, 486; *Miller* v. *Stanich*, 202 Wis. 539; Williston on Contracts, § 1880. (Since the operative period of the lease as it should have been completed expired before the bill was brought and the plaintiff had paid the rent for that entire period there is no occasion for reformation of the lease and no act to be performed by the plaintiff as a condition of cancellation.) In a proper case, also, prosecution of actions at law may be enjoined. *Baker* v. *Langley*, 247

Mass. 127.  As the defendants have not set up the defence that the plaintiff has an adequate remedy at law we need not consider whether, if this defence had been seasonably made, it would have been fatal to the suit.  *Gadsby* v. *Gadsby*, 275 Mass. 159, 167.  And we do not understand that the defendants object to the form of the decree if the plaintiff is entitled to relief on the allegations of the bill and the findings of the master.

The defendants contend, however, that the plaintiff is not entitled to relief for the following reasons: (a) since the plaintiff brought her bill on the theory of fraud and failed to maintain it on that ground, she cannot maintain it on another ground, (b) the finding that the lease was completed without authority was not based upon evidence which was "clear, undisputed and beyond a reasonable doubt," and such evidence is required to support a decree for cancellation, and (c) the "plaintiff, having signed a lease left blank in certain particulars and having received a completed copy of the lease in due course without examining it to see whether it accorded with her wishes or contained any errors, and having taken occupancy of the apartment apparently under the lease, is chargeable with knowledge of its contents, and is not entitled to a decree for cancellation."

1. Failure to prove fraud is not fatal to the suit.  Even if fraud is alleged the bill in another aspect alleges facts showing unauthorized completion of the lease which, if proved, entitle the plaintiff to relief without proof of fraud.

The defendants contend that since fraud was alleged but not proved the bill should have been dismissed even though facts were found which would have entitled the plaintiff to relief on another ground if fraud had not been alleged. For support of this principle the defendants cite the following cases: *Leonard* v. *Smith*, 11 Met. 330.  *Nichols* v. *Rosenfeld*, 181 Mass. 525.  *Chicago, Burlington & Quincy Railway* v. *Babcock*, 204 U. S. 585, 592–593.  *Wall* v. *Parrot Silver & Copper Co.* 244 U. S. 407, 411.  *United States* v. *Safe Investment Gold Mining Co.* 258 Fed. Rep. 872, 879. Whatever force this principle may have in a proper case

it does not apply to a bill framed with a double aspect where, in one aspect thereof, fraud is neither alleged nor essential to relief. *Long* v. *Athol*, 196 Mass. 497, 500. *Williams* v. *United States*, 138 U. S. 514, 517. *Hendryx* v. *Perkins*, 114 Fed. Rep. 801, 806. *Archbold* v. *Commissioners of Charitable Donations & Bequests for Ireland*, 2 H. L. Cas. 440, 459–460. *Hickson* v. *Lombard*, L. R. 1 H. L. 324, 331–332, 336. See also *Price* v. *Berrington*, 7 Eng. L. & Eq. 254, 260. In *Hickson* v. *Lombard*, at page 336, Lord Cranworth stated the principle and its limitation as follows: "I subscribe most readily to the doctrine that, where pleadings are so framed as to rest the claim for relief solely on the ground of fraud, it is not open to the Plaintiff, if he fails in establishing the fraud, to pick out from the allegations of the bill facts which might, if not put forward as proofs of fraud, have yet warranted the Plaintiff in asking for relief. A Defendant, in answering a case founded on fraud, is not bound to do more than answer the case in the mode in which it is put forward. If, indeed, relief is asked alternatively, either on the ground of fraud, or, failing that ground, then on some other equity, a Plaintiff may fail on the first but succeed on the latter alternative. But, then, the attention of the Defendant has been distinctly directed to it, and he has been called on to answer the case according to both alternatives." See also the statement of the Lord Chancellor (Lord Chelmsford) in the same case, pages 331, 332, and that of Lord Cottenham in *Archbold* v. *Commissioners of Charitable Donations & Bequests for Ireland*, 2 H. L. Cas. 440, 459–460. As the quotation shows, the reason of the rule invoked by the defendants does not apply where a bill, though charging fraud, also sets forth an alternative ground of relief.

The cases cited by the defendants are not opposed to the view which we take. It is apparent that the principle as stated by the United States Supreme Court in the cases cited by the defendants was derived directly or indirectly from the English cases herein referred to, and there is no clear indication that the principle was not adopted as limited in those cases. See *Williams* v. *United States*, 138

U. S. 514, 517; but compare *French* v. *Shoemaker,* 14 Wall. 314, 335. And the case of *United States* v. *Safe Investment Gold Mining Co.* 258 Fed. Rep. 872, 879, seems to turn on the circumstance that fraud only was pleaded. So far as our own cases, relied upon by the defendants, are concerned, *Leonard* v. *Smith,* 11 Met. 330, deals with a wholly different question, and the statement in *Nichols* v. *Rosenfeld,* 181 Mass. 525, "that if a man puts his case on that ground [that is, the ground of fraud] he must maintain it on that ground or lose it," raises no implication that the principle would apply if the plaintiff did not "put his case" solely on the ground of fraud, but also alleged another ground of relief. On the other hand, in *Long* v. *Athol,* 196 Mass. 497, 500, the propriety of alleging fraud and also another ground for cancellation of a contract was recognized expressly and cancellation was ordered though fraud was not proved.

2. The master's report does not disclose that the finding that the lease was completed without authority was not supported by adequate evidence. The evidence is not reported except as it is referred to in the master's report. It does not appear from the report that, according to the ordinary standard of proof by a preponderance of evidence, the finding was not justified. But the defendants contend that a higher degree of proof was required — even to the extent of proof beyond a reasonable doubt — and that the report shows that this requirement was not met.

Proof by a preponderance of evidence was sufficient. It is settled that where reformation of an instrument is sought on the ground of a mutual mistake the proof must be "full, clear, and decisive." *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 317. *German American Ins. Co.* v. *Davis,* 131 Mass. 316. *Richardson* v. *Adams,* 171 Mass. 447, 449. *Coolidge* v. *Loring,* 235 Mass. 220, 224. *New York, New Haven & Hartford Railroad* v. *Plimpton,* 238 Mass. 337, 340. And the principle applies when cancellation for such a mistake is sought. Whether this rule requires proof "beyond a reasonable doubt" as those words are used in the criminal law (see *Stockbridge Iron Co.* v. *Hudson Iron Co.*

107 Mass. 290; *German American Ins. Co.* v. *Davis,* 131 Mass. 316, 317), or merely recognizes that, in determining the preponderance of evidence, a completed instrument is evidence of great weight of the intention of the parties thereto and such evidence is not readily overcome by parol evidence of such intention, need not be considered, for the rule, however stated, is not applicable to the present case.

The rule invoked by the defendants applies where, as in cases of mutual mistake, the issue is whether a written instrument deliberately executed expresses the intention of the parties thereto. As was stated in *Stockbridge Iron Co.* v. *Hudson Iron Co.* 102 Mass. 45, 49, the reason for requiring a high degree of proof is "to overcome the strong presumption, arising from their signatures and seals," that the instrument sets forth the precise agreement of the parties. "The weight of evidence cannot be determined by balancing the oral testimony, because the written, contemporaneous declaration of all the parties must always be in the scale, and will outweigh any mere preponderance of the other testimony." *Biser* v. *Bauer,* 205 Fed. Rep. 229, 232. This rule, however (like the parol evidence rule, see *Welch* v. *Bombardieri,* 252 Mass. 84, 87), assumes the existence of an instrument executed by the parties thereto, or by their authority, in the form in which it is presented to the court. Here the existence of a lease in the form intended to be a statement of the agreement of the parties is drawn in question and on that issue the lease as completed has no such evidential weight. This is true as to both the question whether the lease was complete when signed by the plaintiff, and the question whether if it was not then complete it was completed as authorized by her.

Whether, if the requirement of a high degree of proof was applicable to the present case, we could say on the master's report that it had not been met need not be considered.

3. The defendants' contentions based upon receipt by the plaintiff of the completed lease, her failure to examine it, and her entering into occupation of the apartment

apparently thereunder are, in substance, that the plaintiff was charged with knowledge of the terms of the completed lease by reason of her acceptance thereof or her negligence in failing to examine it, and that, consequently, the plaintiff, by accepting the lease and entering into occupation of the apartment apparently thereunder, ratified the act of the defendant Stucklen, the agent of the defendant Greenman, the lessor, in completing the lease, or, even apart from principles of ratification, by such acceptance and occupation became bound by the provisions of the lease as completed. Relief should not be denied on these grounds.

The plaintiff's conduct before she received the first intimation (in June, 1931) that she might be bound by the lease for another year did not amount to a ratification of the act of the defendant Stucklen in completing the lease in an unauthorized manner.

Ratification must be based upon full knowledge of all material facts, subject, however, to the qualification that there may be ratification "when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately, having all the knowledge in respect to it which he cares to have." *Kelley* v. *Newburyport & Amesbury Horse Railroad,* 141 Mass. 496, 499. See also *Combs* v. *Scott,* 12 Allen, 493, 497; *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516, 531. The plaintiff did not have actual knowledge of the contents of the completed lease and, though the means of information as to the contents thereof were within her possession and control, she did not wilfully or deliberately ignore the facts. See *Dole Brothers Co.* v. *Cosmopolitan Preserving Co.* 167 Mass. 481, 483. She had no reason to think that the defendant Stucklen had not completed the lease in the authorized manner and, therefore, no occasion to examine it, when it was returned to her, to see if he had done so. *Rogan* v. *Arnold,* 233 Ill. 19, 21–22. In these circumstances the doctrine that a person who accepts an instrument — or takes title thereunder — without reading it or otherwise informing himself of its contents is charged with knowledge

of such contents (see *Grace* v. *Adams,* 100 Mass. 505, 507; *Coolidge* v. *Smith,* 129 Mass. 554, 558; *Farrell* v. *Chandler, Gardner & Williams, Inc.* 252 Mass. 341; *O'Reilly's Case,* 258 Mass. 205) is not applicable. Consequently, acceptance of the completed lease by the plaintiff did not amount to ratification of the unauthorized act of the defendant Stucklen in completing it.

Moreover, the unauthorized act of the defendant Stucklen was not ratified by the plaintiff's occupation of the premises on the theory that she accepted a benefit resulting from such unauthorized act. If a principal retains a benefit resulting from an unauthorized act of an agent "for a considerable time after he obtains full knowledge of the transaction, he thereby ratifies the act." *Brown* v. *Henry,* 172 Mass. 559, 568. But the plaintiff here did not have full knowledge of the transaction and, moreover, accepted no benefit resulting from the unauthorized act of the defendant Stucklen, for her occupation of the apartment was consistent in all respects with a lease completed as authorized by her. She was not bound on the principle that she could not ratify the transaction in part and repudiate it as to the rest (see *Coolidge* v. *Smith,* 129 Mass. 554, 558), for, without ratification, she would have been entitled to occupy under the lease which she had executed if it had been completed as authorized. See Mechem, Agency, § 439.

Nor, apart from principles of ratification, was the plaintiff bound by a promise to comply with the provisions of the completed lease implied from her acceptance of the instrument and occupation thereunder. A person may by acceptance of a lease and occupation thereunder of the premises covered thereby become bound by its provisions as effectually as if he had executed it as a lessee. His assent is implied from his conduct and the lease though in form an indenture may take effect as an instrument in the nature of a deed poll executed by the lessor. *Carroll* v. *St. John's Catholic Total Abstinence & Mutual Relief Society,* 125 Mass. 565. *Burkhardt* v. *Yates,* 161 Mass. 591, 593. Doubt-

less such a lessee is charged with knowledge of the terms of the lease, as in the case of a deed poll. See *Coolidge* v. *Smith*, 129 Mass. 554, 558. But this is not such a case. Here the lease was not only in form an instrument in the nature of an indenture, rather than of a deed poll, but also in fact executed as such an instrument by both parties thereto. The lessor cannot ignore its execution by the plaintiff. But such execution and the subsequent delivery of the lease by the plaintiff to the agent of the lessor were conditional upon its being completed as authorized and it would not take effect by force of such execution and delivery unless the condition was fulfilled (*Diebold Safe & Lock Co.* v. *Morse*, 226 Mass. 342, 344) or the unauthorized completion thereof ratified. This condition was not fulfilled and, as already pointed out, the unauthorized completion of the lease was not ratified by the plaintiff.

Finally, the plaintiff was not bound by the lease by reason of her conduct after she received an intimation (in June, 1931) that she might be bound by it for another year. Her acts in relation to securing a new tenant for the apartment did not amount to acquiescence in the lease as completed, and the finding of the master that her delay in instituting proceedings did not constitute laches is not inconsistent with other facts found. The conclusion was not required that this delay worked any disadvantage to the defendants. See *Carter* v. *Sullivan*, 281 Mass. 217, 227.

*Interlocutory decree affirmed.*

*Final decree affirmed with costs.*