GATEWAY COMPANY, INC., Defendant and Third Party Plaintiff, Appellant,

v.

CHARLOTTE THEATRES, INC. et al., Appellees.

No. 5833.

United States Court of Appeals First Circuit.

Dec. 8, 1961.

Jerome Medalie, Boston, Mass., Cohn, Riemer & Pollack, Boston, Mass., on the brief, for appellant.

Harold R. Matroni, Springfield, Mass., Nicholas Zeo, Jr., and Theodore E. Dimaurio, Springfield, Mass., on the brief, for Charlotte Theatres, Inc., appellee.

S. Thomas Martinelli, Springfield, Mass., on the brief for Valley Electric & Heating Service, Inc., appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

In the fall of 1958 plaintiff-appellee Charlotte leased from the defendant-appellant Gateway, for a period of ten years, a moving picture theatre in Westfield, Massachusetts. The lease provided that Gateway would install air conditioning, at its expense, by May 1, 1959.

On April 23 Charlotte reminded Gateway of its obligation. From then until June 4 Gateway misrepresented to Charlotte what it had been and was doing, which in actual fact was very little. Finally, on June 4 Gateway orally negotiated, and on June 5 signed, an agreement with Valley, the third party defendant-appellee, to do the work, and so notified Charlotte. Thereafter it continued to ply Charlotte with misinformation as to allegedly expected immediate completion. There was no such expectation. The equipment, which had to be ordered specially, arrived at the theatre on July 21 and July 27, and was operational on August 7. Gateway was inexcusably in default for fourteen weeks.

In the meantime, according to Charlotte's own testimony, Charlotte had decided no later than early in June that it was going to treat the failure to install the air conditioning as a total breach and was going to elect to terminate the lease. However, thereafter, on June 18, it brought suit not for termination, but for damages.[1] Not until August 4, after Gateway had spent $15,500 at Charlotte's demand, and when it was apparent that the breach was about to be rectified, did Charlotte indicate any intention to terminate. Even then it did so only by filing a suit in equity of which Gateway received no notice until August 12. Both of Charlotte's actions were brought in the state court and removed to the district court for the district of Massachusetts. That court, without jury, made the above findings, ordered termination of the lease, and assessed damages. Gateway appeals.

There was no equity in the second suit. Assuming the delay in failure to install the air conditioning could ever be regarded as a constructive eviction,[2]

---

1. Charlotte's witness testified that its decisions and timing were not affected by Gateway's misrepresentations.

2. We have considerable doubt as to this. While air conditioning was described by one witness as "important," no one testified that it was "essential to the enjoy-

ment of the leased premises," Shindler v. Milden, 1933, 282 Mass. 32, 34, 184 N.E. 673, 674, and the record with respect to patronage indicates the opposite. Charlotte grossed almost as much in July when it did not have air conditioning as in August and September when it did, and as much or more in June as it grossed

Charlotte could not sit by until the default was remedied at very considerable expense (nearly two years' rent) and then elect to rely on it. The court, in holding to the contrary, cited no case, and we have found none. A claim of constructive eviction, in landlord-tenant language, is but an election to terminate for breach. At the time Charlotte "elected" the breach had been cured. (The election was upon receipt of notice. Whitehouse Restaurant, Inc. v. Hoffman, 1946, 320 Mass. 183, 68 N.E.2d 686. The court confused cases where the tenant waited for the lessor to repair the breach until it became discouraged, Westland Housing Corp. v. Scott, 1942, 312 Mass. 375, 44 N.E.2d 959; Charles E. Burt, Inc. v. Seven Grand Corp., supra, and the case at bar where the lessor had made the awaited cure.[3]

■■ The judgment terminating the lease must be set aside. There must also be a further trial or finding with respect to Charlotte's claim for damages for delay in the installation. The court's determination of gross damages was within permissible limits. But while the court found the loss of receipts attributable to Gateway's default, it overlooked the fact that from this there must be de-

ducted the percentage thereof which would have had to be paid as additional rental for the films. Charlotte is merely entitled to be made whole. Nor, of course, may it now recover certain items which were conditioned upon a right to terminate the lease.

■ We find nothing in defendant's claim of accord and satisfaction. Defendant contends that the parties agreed to settle all claims on either one basis or another, and that the court should have ascertained which, and hence found an accord and satisfaction. It was open to the court to conclude that because of this dispute the parties never reached agreement. Defendant's extensive argument on this subject is specious.

We turn to the third party complaint. On June 4 Gateway and Valley orally negotiated the terms of an installation contract. Valley reduced them to writing and forwarded two signed copies for Gateway to sign and return one. Gateway signed, but inserted a provision that the work was to be "fully completed" by June 22. It mailed this copy back to Valley with a covering letter stating, "It is my understanding that this installation is to be completed so that it is in full operation by June 22." The letter

in any month between October and the following March, inclusive. A breach to constitute a constructive eviction must be of a fundamnetal nature, not just something that costs some money. A. W. Banister Co. v. P. J. W. Moodie Lumber Corp., 1934, 286 Mass. 424, 190 N.E. 727. Moreover, it must be "permanent." Shindler v. Milden, at supra. We do not reach the question of when delay can be construed as permanent, see, e. g., Charles E. Burt, Inc. v. Seven Grand Corp., 1959, 340 Mass. 124, 163 N.E.2d 4, because here it was cured before it was asserted.

3. Seven Grand is a decision of some interest. While the court recognized the principle that a tenant asserting constructive eviction must vacate within a reasonable time, it held this period to be suspended if the tenant brought an equitable action to obtain a decree of termination. It is, of course, true that a tenant who moves out, asserting he has been con-

structively evicted, stands a chance of losing a subsequent lawsuit. We see merit in allowing him to avoid so exposing himself. But by the same token, if the tenant seeks equity to permit him to suspend decision, he should afford the landlord the same flexibility. If, after a tenant vacated, the landlord offered to repair the breach it would doubtless be too late. McCall v. New York Life Ins. Co., 1909, 201 Mass. 223, 226, 87 N.E. 582, 21 L. R.A.,N.S., 38. The tenant cannot be required to hold himself in readiness to move back whenever the breach is remedied. Cf. Parker v. Russell, 1882, 133 Mass. 74, 76. But equity acts in praesenti, and if the tenant postpones taking a final position, the landlord should have the same privilege. In the case at bar the tenant not only did not cast the die by vacating, it did not even commence its equitable action until the breach was quite evidently about to be repaired. There could be no equity in such a procedure.

made no reference to the added provision in Valley's document. Valley made no reply, but immediately upon receipt ordered the special equipment. Gateway contends that Valley was obligated to complete by June 22. The court disagreed.

The court did not say why there was no contract in accordance with Gateway's modification, except to say that in point of fact there had been no such prior understanding and consequently Gateway's act was unauthorized. As to the insertion in the document itself, in view of the fact that it was not discovered, this may well have been a sufficient answer. In the absence of actual knowledge, the test is whether there was reason for Valley to suppose that such addition might have been made. Absent the letter, the case would seem more like Kidder v. Greenman, 1933, 283 Mass. 601, 187 N.E. 42, 88 A.L.R. 1370, than Long v. Agricultural Ins. Co., 1926, 257 Mass. 240, 153 N.E. 792, and Johnson v. New York, N. H. & H. R. Co., 1914, 217 Mass. 203, 104 N.E. 445. But the covering letter creates a more serious problem. Valley could not disclaim knowledge of its contents.[4] A covering letter may be part of the total agreement. Rodriguez v. Secretary of the Treasury of Puerto Rico, 1 Cir., 1960, 276 F.2d 344. The advice of Wm. Randolph Hearst, "Throw [it] in the wastebasket. Every letter answers itself in a couple of weeks," Koenigsberg, King News, 273 (1941), is not a safe legal principle.

When Gateway executed and returned the paper drafted by Valley, one of several situations obtained. Either there was an agreement reached without a completion date, but a request for such,[5] or Gateway's conduct constituted a rejection of Valley's proposal and a counteroffer. At the least there was an apparent expression of understanding, or misunderstanding, of Valley's obligation. In no event was this comparable to a proposal from a stranger that, as matter of law, could be safely ignored. This issue should have been considered. Possibly the court might have found that Gateway made the purported modification solely as part of its campaign to mislead Charlotte as to early completion, knowing all the while that completion by June 22 was a physical impossibility. In that case it could not reasonably have regarded Valley's failure to reply as an assent. But the court might have found that Valley's going ahead without replying to the letter was reasonably understood as a manifestation of an assent thereto. If there was already a completed agreement, this does not as matter of law mean that there might not be assent to a modification. There was no problem as to consideration. Mass. Gen. Laws Ann. ch. 106, § 2–209(1). The case must accordingly be remanded for further findings or for a new trial of the third party complaint.

Judgment will be entered vacating the judgments of the District Court and remanding the actions for further proceedings not inconsistent herewith.

4. The letter was but two sentences long. While it was viewed only by a secretary, it was not addressed to her, cf. Exchange Realty Co. v. Bines, 1939, 302 Mass. 93, 18 N.E.2d 425, but to Valley, attention of its president, who had executed the original document. If he did not choose to read his mail, but delegated his secretary to attend to it, then as matter of law her knowledge was the corporation's knowledge. We cannot conceive how business could be done in any other manner.

5. There are two ways by which a completed agreement might be found. It may be that the parties had made a binding agreement on June 4, cf. Murphy v. Chichetto, 1948, 323 Mass. 11, 79 N.E.2d 898; Coan v. Holbrook, 1951, 327 Mass. 221, 97 N.E.2d 649, as distinguished from an understanding that there was to be no agreement until the terms had been reduced to writing and signed, cf. Lizza & Sons, Inc., v. D'Onfro, 1 Cir., 1960, 282 F.2d 175. This was a question of fact not resolved by the court. Alternatively, although we do not decide, since this was a contract for sale of specific goods there may have been a completed agreement upon the execution of Valley's document, with a proposal for additional terms, by virtue of Mass.Gen.Laws Ann. ch. 106, § 2–207 (1958).