Cap's Auto Parts, Inc. *vs.* Arthur F. Caproni.

Essex.    January 9, 1964. — March 6, 1964.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Sale,* Sale of stock, Contract of sale. *Contract,* Covenant against competition. *Good Will. Unfair Competition. Equity Pleading and Practice,* Bill.

Where it appeared in a suit in equity by a corporation that serious differences developed in the management of the plaintiff's business thirteen years after its incorporation by three brothers whose surname in an

abbreviated form was a part of the plaintiff's name and who were its shareholders and officers and directors and the active participants in its business, that an agreement was executed whereby one brother through the plaintiff bought for a substantial price all the shares of the other two brothers, each of whom held a thirty percent stock interest, and the parties agreed to "do or cause to be done, all things necessary or essential to the carrying out of the apparent intentions of this agreement," that the buyer had relied on a statement by one of the sellers, the defendant, that "he would not do anything to harm or hurt the corporation" and "was retiring from business for good," and that the defendant severed all active connection with the plaintiff, there arose in the circumstances an implied covenant on the part of the defendant not to compete with the plaintiff, even though its good will was never mentioned, and a final decree permanently enjoining the defendant, who had commenced a business similar to that of the plaintiff less than one mile distant, from engaging in that business in a relatively small area around the place of business of the plaintiff was affirmed.   [215–216]

Allegations in the bill in a suit in equity by a corporation against one who formerly had been one of its shareholders, officers and directors and an active participant in its business, together with a written contract between the parties made a part of the bill, stated facts which warranted a conclusion of an implied covenant on the part of the defendant not to compete with the plaintiff and supported a final decree granting it relief on that basis [217]; and, since the principal facts justifying a conclusion by the judge of the implied covenant were in effect admitted by the defendant, there was no occasion upon his appeal from the final decree to remand the case to the Superior Court for further findings respecting an implied covenant, even though the bill also contained allegations of fraud on the part of the defendant and he contended that "the case was tried on" the issue of fraud.   [216, 217–218]

BILL IN EQUITY filed in the Superior Court on August 14, 1962.

The suit was heard by *Macaulay, J.*

*Paul Resnick* for the defendant.

*Joseph Kalikow* for the plaintiff.

REARDON, J.   The defendant appeals from a final decree permanently enjoining him from engaging in the business of selling new and used automobile parts and supplies, wrecking automobiles, and selling scrap iron and metals within the territorial limits of Lynn and Saugus.   The trial judge filed a report of material facts.   The evidence is reported.

The plaintiff sells automobile parts, accessories, and supplies and also is engaged in repairing and wrecking auto-

mobiles, selling used parts, and operating a parking lot. It was incorporated in 1948 by three brothers; 1,000 shares were authorized and issued, 400 to Henry J. Caproni, Jr., 300 to Albert R. Caproni, and 300 to the defendant, Arthur F. Caproni. Henry became the president, Albert the treasurer, and Arthur the clerk of the new corporation. All were directors. Severe differences developed among them in 1961, and after some litigation they executed a written agreement on November 17, 1961, under which the plaintiff agreed to buy the 600 shares held by Albert and Arthur. For his shares Arthur was to be paid a total of $80,000, $15,000 in cash, and the remaining $65,000 in or within ten years. Two notes payable to him were issued, one for $30,000 secured by placing his stock in escrow, and a second for $35,000 secured in part by a mortgage on an undivided one-half interest in the plaintiff's realty. The parties agreed, inter alia, "[t]o do or cause to be done, all things necessary or essential to the carrying out of the apparent intentions of this agreement." Arthur resigned his posts as clerk and director effective December 30, 1961. In August, 1962, he opened in Lynn, on the same side of the street and less than one mile distant, a business similar to the auto parts business of the plaintiff. This bill followed.

The trial judge found that during the course of conferences leading up to the written contract of sale Arthur stated that he wanted no part of the corporation property, that he wished to retire, that "he would not do anything to harm or hurt the corporation," and that he was "retiring from business for good, and that's all there was to it." The judge also found that Henry relied upon these statements of the defendant and that they induced him to purchase the interests of his brothers through the corporation. Although the defendant had been in business only a month prior to the hearing, some of the plaintiff's customers had already traded with him. The judge found that the defendant never intended during the negotiations to retire "but intended to go into the auto parts or auto wrecking business, the only kind of businesses that he knew." Further

findings relative to additional circumstances concerning the sale will be adverted to in succeeding discussion.

There is no error discernible in the report of material facts. It constitutes an elaborate and careful treatment of the evidence and contains no indication of any inconsistency or contradiction. The findings are not plainly wrong. *Willett* v. *Willett*, 333 Mass. 323, 324. *Cline* v. *A. A. Will Sand & Gravel Corp.* 346 Mass. 40, 42.

The case presents two principal issues: (1) whether there resulted from the written agreement and the attendant circumstances an implied covenant on the part of Arthur not to compete with the plaintiff; and (2) whether, as contended by the defendant, there was error in granting relief to the plaintiff on the ground of an implied covenant when the bill sounds in fraud, and fraud was the principal fact sought to be established by the plaintiff at the trial.

1. The trial judge noted a striking similarity between the facts before him and those in *Tobin* v. *Cody*, 343 Mass. 716, and based his ultimate finding for the plaintiff upon that authority. The Tobins and the Codys had each owned one half of the shares of a corporation engaged in the scrap metal business until, pursuant to a written agreement, the Tobins purchased the entire Cody interest. As in the present case the good will of the business was not mentioned during the negotiations or in the agreement, and the agreement was silent on the question of subsequent competition by the Codys, who proceeded to establish a scrap metal business some four years later a short distance from and in the same city with the original enterprise then conducted by the Tobins. In an opinion containing such substantial reference to precedent and authority that repetition of them now would serve no useful purpose, the court held that the circumstances indicated that a covenant not to compete was an implied term of the purchase and sale agreement. "The existence and scope of an implied covenant not to compete depend upon the circumstances attending the contract of sale and the nature of the business or the interest which is sold. . . . [Citations omitted.] Although good will was

not mentioned, the sale by the Codys of all the stock held by them, the relinquishment of any offices in the corporation, and the severance of all connection with it constituted a complete divestment of their interest in the corporation and a transfer of that interest to the plaintiffs remaining in the business. It was the equivalent of the sale of 'all the property and assets' which they had." *Tobin* v. *Cody, supra,* at 720. The court went on to review the established doctrine that by presumption good will passes to the buyer of all the assets of a business and that when good will does pass to the buyer, the seller may not compete with the buyer so as to derogate from the value of that which is sold. In this instance the price paid for a percentage block of stock includes an amount for a corresponding share of the corporate good will. "Where, therefore, the sellers of the stock have been active participants in the business and are in a position to control or affect its good will, we think not only that they may validly bind themselves by an express promise not to derogate from the good will reflected in the value of the stock sold by competing with the buyers remaining in the business, but also that in appropriate circumstances such a promise can be implied in the sale of the stock itself. . . . In determining whether a promise not to compete has been implicitly made by the . . . [former participant] in the corporation's business, the number of shares held and sold by the seller is a factor . . . . The amount of money paid by the buyer, the identity of the names of the sellers with one another and with the corporate name, and the duration and importance of the seller's association with the business may well be . . . of major significance in arriving at such a determination." 343 Mass. at 721–722.

We hold that the circumstances as found by the trial judge fully justify the finding of an implied covenant under the *Tobin* standard. Arthur's expression of his intention to retire could be properly considered as one relevant circumstance of the sale. *Tobin* v. *Cody, supra,* at 722, fn. 2. Arthur was one of the three principal participants in the

business and an officer and director. He sold out his entire interest of thirty per cent and severed all active connection with the plaintiff to remain only as its creditor. He had been associated with the business for his entire working life, most of that time as an officer. An abbreviated form of "Caproni" was a part of the corporate title. Due to his familiarity with the customer lists, his personal contacts with the customers in the course of his duties, and his intimate knowledge of the firm's business methods, Arthur was clearly in a position adversely to affect the plaintiff's good will when he opened his own auto parts business near by. Moreover the trial judge found that the amount of the consideration paid for Arthur's shares supported the inference of an implied covenant not to compete.

The final decree below permanently enjoined the defendant "from engaging in the businesses of selling new and used automobile parts and supplies, the wrecking of automobiles and selling of scrap iron and metals within the territorial limits of . . . [Lynn and Saugus]." An implied covenant not to compete may be specifically enforced if reasonably limited in time and space, and a permanent injunction is not per se unreasonable. *Tobin* v. *Cody, supra,* at 723. The prohibited area is relatively small, and the judge could well have concluded that Arthur will have the power to derogate from the good will of the plaintiff for the rest of his life. See *id.* at 723–724.

2. The defendant contends that since the issues "were framed on fraud and the case was tried on that issue . . . the judge cannot then base his decree on another ground" — the implied covenant not to compete. He complains of the lack of opportunity to introduce his own evidence to rebut the existence of the implied covenant.

General Laws c. 214, § 12, prescribes the form of a bill of complaint: "The material facts and circumstances relied on by the plaintiff shall be stated briefly, and immaterial and irrelevant matters omitted." The scope of the bill is determined by the facts stated and they are the guide on whether a case for relief is presented. See *Bleck* v. *East*

*Boston Co.* 302 Mass. 127, 130; *Segal* v. *Switzer,* 305 Mass. 27, 29. The question initially before us is whether the bill with the written contract of sale which is a part of it sets out facts sufficient to justify a finding of an implied covenant not to compete. In summary the bill alleges that the defendant, the holder of a thirty per cent block of the plaintiff's stock, sold his entire interest to the corporation for some $80,000, stated he intended to retire, resigned his positions as officer and director, and thereafter launched near by a similar business of his own where he employs experience and knowledge gained from his association with the plaintiff. We hold that these facts do afford the benefit of the *Tobin* doctrine to the plaintiff.

*Kidder* v. *Greenman,* 283 Mass. 601, is of interest in this connection. In that case the bill alleged that the plaintiff signed a written lease containing no stipulation as to the length of tenancy with the understanding that the defendants would later fill in the appropriate blanks as previously orally agreed, and that the defendants "wrongfully and fraudulently" filled in the blanks differently. The court held that a failure to prove fraud did not bar recovery. "Even if fraud is alleged the bill in another aspect alleges facts showing unauthorized completion of the lease which, if proved, entitle the plaintiff to relief without proof of fraud." 283 Mass. at 611. It is to be noted that the requirement was that the bill state facts justifying relief on some theory, not that the theory be stated, and indeed in the *Kidder* case the theory was not stated. Contra: *Hickson* v. *Lombard,* L.R. 1 H.L. 324, discussed in the *Kidder* case, *supra,* at 612. Compare *Nichols* v. *Rosenfeld,* 181 Mass. 525 (dictum).

Nor can the defendant derive any comfort from his charge of prejudice by unfair surprise. The defendant's counsel fully explored the circumstances obtaining at the time of the sale for the purpose of rebutting the damaging evidence that the defendant had made a knowingly false representation upon which Henry relied. It is important that the principal facts justifying the inference of the im-

plied covenant were in effect admitted by the defendant — that he had been a principal participant in the business of the plaintiff since its incorporation, that he held a thirty per cent block of stock, that he was an officer and director intimately familiar with its affairs, and that he had sold out his entire interest in the family corporation, severed his connection, and subsequently commenced a competing business in close proximity to the plaintiff. The defendant's admissions so fully substantiate the findings that it would be a futile act to accede to his contention that this matter be remanded for further exploration on points already thoroughly considered.

*Decree affirmed with costs of appeal.*