ROBERT B. SMITH *vs.* GEORGE R. JAGOE.

Essex.   November 1, 1898. — February 28, 1899.

Present: FIELD, C. J., HOLMES, LATHROP, BARKER, & HAMMOND, JJ.

*Replevin — Exceptions — Mortgage — Material Alteration — Evidence.*

It is incumbent upon the excepting party to show by his bill of exceptions that the rulings excepted to were wrong, and, further, that he was harmed by the error.

The contention that questions admitted under objection were leading in form is not open on a bill of exceptions which does not show that the questions were objected to for form.

In an action of replevin, if the defendant relies upon a mortgage which has been assigned to him, and which was drafted by the use of a printed form containing blanks, and the plaintiff contends that there has been a material alteration of the mortgage since he signed it, by writing the names of several articles in the blank to be filled with the description of the property, evidence of the plaintiff's expectation as to how the blanks were to be filled by the mortgagee, to whom the mortgage after being signed was intrusted for that purpose, may be competent.

REPLEVIN of certain articles of personal property. At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*I. B. Keith,* for the defendant.

*W. H. Niles,* for the plaintiff.

BARKER, J.   The action is replevin, and the plaintiff was required to show that he had the right to the possession of the property taken upon the writ.   He was the general owner of the property, and the defendant relied upon a mortgage which purported to have been made by the plaintiff to one Moody, who had assigned it to the defendant.   The course of the trial is not very clearly disclosed by the bill of exceptions.   It is stated that the plaintiff made a *prima facie* case and rested.   It would

seem that in putting in his defence the defendant introduced in evidence the mortgage and the assignment of the same to himself, and testified that after he had received the assignment he gave the plaintiff written notice that he owned the mortgage, and that thereafter the plaintiff paid interest upon it at four different times, for which payments he took receipts, which were produced by the plaintiff, as we suppose. The mortgage seems to have been drafted upon a printed form containing blanks. The blank to be filled with the description of the mortgaged property was followed by these printed words: " meaning hereby to convey to the said . . . all furniture of every description, useful and ornamental, beds, bedding, printed books, printed music, carpets, rugs, curtains and their fixtures, draperies, pictures, engravings, mirrors and their frames, statuary, works of art and ornament, plate and plated ware, china, glass, crockery, tin and iron ware, clocks, musical instruments, trunks and other travelling equipments, sporting goods, and each and every other article of personal property contained in . . . situated No . . . on said," etc.

The descriptive clause of the mortgage, as produced at the trial, contained before the printed words above stated the written words: " 1st, One Norris upright piano, No. 5045; Plush parlor suit; Tap. Carpet; Cherry Centre Table; Hanging Lamp; Marble Clock; Mantel Mirror; Four Pictures; Range and ware; Crockery, glass and Silver plated ware"; and the first blank in the printed portion of the descriptive clause was filled with the name of the mortgagee, and the remaining blanks with words which designated the plaintiff's dwelling as the place in which the mortgaged property was contained.

The bill of exceptions does not state whether the defendant rested his case upon the production of the mortgage, his own testimony relating thereto, and the production of the four receipts given by him to the plaintiff for payments of interest made after notice of the assignment to the defendant. It does state that it was claimed by the plaintiff, and it seems a fair inference that this contention was made in that part of the trial commonly called the rebuttal, that there had been a material alteration of the mortgage since he signed it, and that the defendant knew of the alteration before the mortgage was assigned to

him, and the bill also states that the plaintiff, his wife, and the defendant all testified.

At the end of the trial four questions were submitted to the jury and answered by them, from which it appears that the jury found that there was an alteration of the mortgage after it was executed, the alteration consisting of the writing in of the words, " Plush parlor suit; Tap. Carpet; Cherry Centre Table; Hanging Lamp; Marble Clock; Mantel Mirror; Four Pictures; Range and ware; Crockery, glass and Silver plated ware "; that the plaintiff signed the mortgage in blank, with an understanding that Moody was to fill the blanks; and that Moody filled the blanks in violation of what was understood and agreed, that violation being the insertion of the words last quoted, and that the defendant had knowledge of this alteration before or at the time of the assignment to himself.

The bill of exceptions does not purport to contain any statement of instructions requested or given to the jury, and it is to be assumed that the questions which were submitted to the jury and answered were upon issues as to which the parties were contending at the trial, and that they were properly left to the jury and under correct rulings and instructions. The only question which the bill of exceptions presents for our decision is whether certain questions put to the plaintiff, when under direct examination as a witness, were improperly allowed, the defendant having objected to them, and saved his exception to their allowance. It was suggested by counsel at the argument that some of these questions were in fact put to the witness by the court, but it is not so stated in the bill, and we assume that they were asked by the plaintiff's counsel. The plaintiff seems to have testified, without objection, that he signed the mortgage and mortgage note in blank at his house, to which Moody brought them to be signed, and that there was no writing on the mortgage or the note when the plaintiff signed them, and that he did not read the printed matter because he was in a hurry. The bill of exceptions next states that the plaintiff was further questioned, under the defendant's objection and exception, and states at length sixteen questions and their answers, so that it appears that the only error which the defendant can urge to sustain his bill is the admission of these questions to the plaintiff.

It is to be noticed that, owing to the form of action and the previous course of the trial, the bill of exceptions does not enable us to know with certainty or precision just what contentions of the parties were actually upon trial when the questions excepted to were allowed to be put to the plaintiff, and it should also be observed that it is incumbent upon the excepting party to show by his bill of exceptions that the rulings excepted to were wrong, and further that he was harmed by the error.

His first contention is that the questions were leading in form. But the bill of exceptions does not show that the questions were objected to for form, and the contention is not now open to the defendant.

The substance of the testimony given by the plaintiff, in response to the questions admitted under exception, was that at the interview when the mortgage was signed in blank Moody said that he would have it filled out, and the plaintiff expected him to do so; that what was said as to what should be written in was said by Moody, and that it was that he had no claim on anything but one upright piano, and that while it was not said in explicit words that Moody might write in the words "one upright piano," the plaintiff expected him to write in words to make the mortgage cover a piano and nothing else; and further that the amount then due Moody was about thirty-five dollars, according to certain receipts.

When, as in the present instance, it is for a jury to determine first whether an instrument upon which the rights of the parties depend was in fact executed and delivered in blank, with the understanding and intention that the blanks should be filled up by the party to whom it was so delivered, and further whether that party has so exceeded the authority impliedly given him to fill out the blanks as to render the instrument void as against its maker, the situation of the parties, and all that was said at the time when the implied authority was given, are relevant and competent.

Furthermore, it is competent for one who holds or claims under a document so made and delivered to contend that one who has intrusted a blank document bearing his signature to another person with the expectation that the latter will fill the blanks is estopped from repudiating the insertion in the blanks

of anything which the signer of the instrument should have expected would be inserted, either by reason of the transaction itself of which the instrument was a step, or of the usual course of business with reference to such instruments. *White* v. *Duggan*, 140 Mass. 18. While the expectation of the grantor in a mortgage cannot be given in evidence to affect the construction of the language of the document, it may well be a material element in determining whether a fraud has been practised upon the maker of a mortgage delivered in blank by the filling of the blanks, and also in determining the further question whether the maker of such a mortgage is estopped from asserting that the blanks were improperly filled.

So far as the bill of exceptions enables us to understand the issues which were pending before the jury, we think that, in the attitude which the trial had then assumed, the evidence given under the defendant's exception was competent in some aspects of the case.                    *Exceptions overruled.*