MERCHANTS & FARMERS BANK *v.* R. K. DENT ET AL.

[59 South. 805.]

1. EQUITY. *Fraud. Answer. Cancellation of instrument. Fraudulent alteration. Pleading.*

Where a bill in equity charges fraud, which if true, entitles the complainant to relief, an answer should be filed denying the fraud so charged.

2. EQUITY. *Fraudulent alteration. Cancellation of instrument.*

While the general rule is that he who seeks equity must do equity, this does not apply, where the beneficiary in a trust fraudulently alters the trust deed so as to include property not intended to be conveyed therein and the grantor seeks by injunction to restrain a sale of the property under the trust deed so fraudulently altered and a cancellation of the instrument.

3. ALTERATION OF INSTRUMENT. *Effect. Fraud.*

The fraudulent alteration of an instrument in a material matter renders the instrument void; first, because no man is permitted, on grounds of public policy, to take the chance of committing a fraud, without running any risk of loss by the event, when detected, and second, because the identity of the instrument is destroyed, and to hold one under such circumstances would be to make for him a contract to which he never agreed.

APPEAL from the chancery court of Newton county.

HON. SAM WHITMAN, Chancellor.

Suit by R. K. Dent and wife against the Merchants and Farmers Bank and others. From a judgment overruling a demurrer to the bill, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ellis B. Cooper,* for appellant.

At the outset let it be understood that the appellants do not contend that the alteration charged in the bill does not avoid the deed of trust. This is elementary. Appellants contend most earnestly that under the case made by this bill, notwithstanding its allegations of fraud, that they have certain equitable rights in the matter which appellees do not recognize and which the appellees must concede before equity will lend its aid. In short the contention is that the maxim, " 'He who seeks equity must do equity,' is a general principle applicable to all classes of cases whenever necessary to promote justice, and requires that any person seeking the aid of equity shall have accorded, shall offer to accord, or will be compelled to accord to the other party all of the equitable rights to which the other party is entitled in respect to the subject-matter."

Pomeroy in volume 1, Eq. Jur. (3 Ed.), sec. 385, says of this maxim or principle: "This maxim expresses the governing principles that every action of a court of equity in, determining rights and awarding remedies, must be in accordance with good faith. The meaning is that whatever be the nature of the controversy between two definite parties and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary party and growing out of or necessarily involved in the subject-matter of the controversy. It says in effect, that the court will give plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit. The meaning of the principle was more definitely expressed by an eminent judge in the following terms:

'The court of equity refuses its aid to give to the plaintiff what the law would give him, if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce.' ''

In section 388 of the last quoted work is the following: ''This principle (doing equity) is not confined to any particular kind of equitable remedies but pervades the entire equity jurisprudence, so far as as it is concerned with the administration of equitable remedies.''

In 6 Cyc. 329, par. 7, under subject of Cancellation of Instruments, we find: ''In nearly all jurisdictions a bill is demurrable in which the complainant does not offer to return any consideration which it shows that he received, or otherwise place defendant *in statu quo,* or sufficiently excuse himself from that duty.''

In Howard (Miss.), 569, we find: ''Whether it be a rule in use as to usurious contracts only, or not, it has its origin in principles of equity, I cannot perceive why it should prevail in one class of cases only.''

Mississippi's reports are not barren of applications of this principle. We find the debtor seeking relief from usurious contracts required to pay principal and lawful interest. 6 Howard, 569.

In *Duncan* v. *Moore,* 7 So. 221, 67 Miss. 136, we find a husband seeking the cancellation of a deed of trust on his homestead and the basis of this demand was that his wife, who was living, had not signed. The court required equity of him before it would lend its aid to cancel an absolutely void instrument.

In *Deans* v. *Robinson,* 1 So. 159, 64 Miss. 195, we find a debtor seeking relief from a deed of trust which the court held null and void and affected with an incurable infirmity required to do equity. This deed was void for the reason that the grantee therein was a merchant who conducted a mercantile business without paying the

tax required by statute, the law punishing one who so conducted a business by declaring all of his contracts void.

Other instances are found in *Powell* v. *Plant,* 23 So. 399; *Salter* v. *Embrey,* 18 So. 373; *Stewart* v. *Brooks,* 62 Miss. 492; *Newman* v. *Taylor,* 69 Miss. 670, 13 So. 831; *Durr Company* v. *Mitchell,* 52 So. 583; *Bowdre* v. *Carter,* 64 Miss. 291, 1 So. 162; *American Mortgage Co.* v. *Jefferson,* 69 Miss. 770, 12 So. 464, and many others.

Now in what manner can the case at bar be differentiated from the cases cited? There is only one point of difference and that point of difference is that there has been a fraudulent alteration in the deed of trust, a part of the instrument sought to be cancelled.

The vital issue, therefore, is, Does the presence of fraud attached to the alteration when taken and considered with the other facts disclosed by the bill of complaint wholly defeat the application of the maxim, ''He who seeks equity must do equity?''

In answering that question I submit with all candor that the presence of such an element in a case simliar to the one at bar has no such effect. The only limitation to be found in cases of fraud is that equity will not compel the complainant, the one seeking equity, to accord to the other party, his adversary, any equity which was acquired through fraud and through fraud alone. Why such a limitation? Because equity will not permit an advantage to be gained through fraud. The equities which appellants have in the instant case are not acquired through fraud. The right to the indebtedness of appellees did not accrue to the appellant bank through the perpetration of fraud. No fraud besmirches that indebetedness and the bill discolses that. Any equitable right appellant has to subject the property in the deed of trust, other than the lot alleged to have been inserted after the execution and delivery, was not acquired through fraud. No equitable right, as distinguished

from a legal right, possessed by appellants has been acquired through fraud and counsel for appellees cannot indicate a single equity acquired through fraud. If any fraud crept into this transaction it crept in after it had been consummated. It may be argued that it would be revolutionary to give life to the void deed of trust and require appellees to offer the property which they admit was properly in the deed of trust as according appellants equity. On analysis, however, as much is not done in the requiring of that as was done in the case *Deans* v. *Robinson, supra,* where the court put life into a deed of trust in question which was admitedly void *ab initio.* In the last case cited, there was never a valid indebtedness and there was never a valid deed of trust. In the case at bar, there are valid liens and valid evidences of debt. If not valid now, they were valid when first made. If the operation of the principle of doing equity is applicable in the Deans case, *a fortiori* is it applicable in the instant case. Yet appellees in asking aid of the court of equity not only do not offer to do equity of any description but they ask the court to inflict upon appellees the complete forfeiture of both the lien under the deed of trust and the indebtedness which it secures. They ask the court to do that which is inequitable.

*J. R. Byrd,* for appellee.

It is an elementary principle of law that the chancery court will not entertain a demurrer to a bill in chancery where a fraud is charged unless the defendant first files an answer denying the fraud charged. Especially is this true where wilful and corrupt fraud is charged and the bill sworn to, as in the cause at bar. This has been especially held by this court in the case of *Hentz* v. *Delta Bank* 76 Miss. 433; *Hanson* v. *Field,* 41 Miss. 721. Here is a case where the most unconscionable fraud has been perpetrated, and charged in the bill specifically and at length; all the facts being set out in detail, as required

under the law, and they are admitted to be true in defendant's demurrer. Could the chancellor have done otherwise than overrule the demurrer on this ground alone? Most assuredly not. I recognize the fact that it is a rule in the chancery court, that he who seeks equity must do equity. Yet, while this is a rule, there are exceptions to it, and this is one of the exceptions.

The court will bear in mind that appellants were undertaking under this trust deed to sell, not only the property that was conveyed, but also Lot No. two (2) that was wilfully, corruptly and fraudulently inserted in the trust deed, after its execution and delivery, and, too, without the knowledge or consent of appellees, or either of them. The court will also bear in mind that this is a general demurrer. It is my understanding of the law that where a general demurrer, going to the entire bill, is interposed it should be overruled if any part of the bill is good, or if any relief can be granted under any part of the bill. This is elementary, and I deem it useless consumption of time to cite authorities.

I am sure that no court on earth would permit this Lot No. 2 to be sold under this trust deed. This bill is certainly good to prevent the sale of this Lot No. 2. If this is not the law, then all that would be necessary for an unscrupulous creditor to do would be to get his debtor to give him a trust deed on some little insignificant piece of property, and then wilfully, corruptly and fraudulently insert just such other property as he desires, and then on the neglect, refusal or inability of the creditor to pay, he could proceed to sell, not only the insignificant property, on which he took the trust deed, but also the property, that on which the trust deed was given and that inserted by him, and turn the debtor out of house and home, as is attempted to be done in this case. Is it possible that the law will permit the home of these complainants to be sold under this trust deed because of their inability to pay the debt admitted to be due the defendants.

This trust deed became absolutely void and of no effect
the moment this Lot No. 2 was written in the trust deed,
as charged in the bill. It is lifeless and defendants have
no rights under it. Under the law, wherever an altera-
tion is made that is material, if made through ignorance
or in good faith, it only destroys the instrument, but
where a material alteration is made with fraudulent in-
tent, as in the case at bar, it not only destroys the instru-
ment, but destroys the debt also. That the insertion of
this Lot. No. 2 in this trust deed was a material change
will not be denied. This is the law now, and has always
been the law. Cyc. says, ''As a general rule, the effect
of an alleged change in an instrument depends first upon
the character of the change, that is, whether it is ma-
terial or immaterial. Any change in an instrument which
causes it to speak a different language in legal effect of
that which it originally spoke, which changed the legal
identity or character of the instrument, either in its
terms or the relation of the parties to it, is a material
change or technical alteration, and such a change will
invalidate the instrument against all parties not con-
senting to the change.'' Again we find this: ''The rule
that a material alteration avoids the instrument is
founded upon two reasons. First (and what is said to be
true foundation for the doctrine), that no man shall be
permitted on the grounds of public policy to take a
chance of committing a fraud without running a risk
of loss by the event when it is detected; and, second, be-
cause the identity of the instrument is destroyed, and to
hold one under such circumstances would be to make for
him a contract to which he never agreed, which is espe-
cially true in the case of a surety.'' 2 Cyc. 179. And fur-
ther we read: ''A change in description of property
conveyed, so as to give it an entirely different name, and
thus destroy its original identity, so as to make the in-
strument cover property different from that originally
conveyed  .  .  .  such an act will constitute an altera-

tion of the instrument. So of the addition of words affecting the quantity of land embraced in the agreement of sale, or a change in the description of property in a chattel mortgage by inserting property not originally embraced therein." 2 Cyc. 202.

My contention is, that this trust deed is absolutely void, and no effect or life can be given it by the court. "An altered instrument is so far vitiated that no recovery can be had, either on its original or altered terms. It cannot be considered void for the unauthorized change and valid in other respects, but it is void altogether." 2 Cyc. 182. This is not true in an executed contract, such as an absolute deed, but is true in an executory contract, such as the one under considereation here. We read in 2 Cyc. 188 that, "the better rule seems to be that an alteration of a morgage destroys, as it remains executory until it is enforced, thus coming under the rule applying to executory contracts; and especially is this true where the mortgage itself is considered a mere lien or incidental security for the debt." We read in 2 Am. & Eng. Ency. of Law, 188, "A material alteration made in a mortgage after its execution, and without the consent of the mortgagor, either by the mortagee or a third person at his instance, has the effect of annulling the instrument as a lien upon the property, and likewise of preventing the foreclosure of the same." This seems to be the law everywhere.

REED, J., delivered the opinion of the court.

The appellees, R. K. Dent and wife, Emma Dent, executed and delivered to E. B. Cooper, trustee, a deed in trust on several lots of land in the town of Newton, Miss., to secure certain indebtedness owing to the Merchants' & Farmers' Bank. A portion of appellees' homestead was included in the land, and therefore the deed in trust was executed by Mrs. Dent. After the execution and delivery of the instrument, H. F. Sivley, the cashier and

duly authorized agent of appellant Merchants' & Far-
mers' Bank, it is alleged in the bill of complaint, mate-
rially altered the deed in trust by inserting another lot
therein, which lot was the remainder of the homestead
property of appellees. The bill charges that this altera-
tion of the deed in trust was wilfully, corruptly, and
fraudulently done. The appellees did not know of the
alteration, and did not consent thereto. The appellants
interposed a general demurrer to the bill. No answer
denying the fraud charged in the bill was filed.

Where a bill in equity charges fraud, which, if true,
entitles the complainant to relief, an answer should be
filed, denying the fraud so charged. *Hentz* v. *Bank*, 76
Miss. 429, 24 South. 902.

It is claimed by appellants that the bill is insufficient,
because it "sought the aid of equity, but did not offer
to do equity." Under the facts of this case, it was not
incumbent upon appellees to offer to do equity. Their
bill sought an injunction against the sale of their prop-
erty under the altered deed in trust, and sought the can-
cellation of the instrument itself.

Because of the unwaranted changing of the deed in
trust, it became void and of no effect. The original in-
strument executed by appellees was in reality destroyed.
It was not the paper which they signed and delivered.
The appellants have no rights thereunder. It is the
rule of law that the material alteration avoids the in-
strument. The reason of this rule is given in 2 Cyc. p.
179, as follows: "First (and what is said to be the true
foundation of the doctrine), that no man shall be permit-
ted, on grounds of public policy, to take the chance of
committing a fraud without running any risk of loss by
the event when it is detected; and, second, because the
identity of the instrument is destroyed, and to hold one
under such circumstances would be to make for him a
contract to which he never agreed, which is especially
true in the case of a surety."

From the case as presented by the pleadings, the chancellor did not err in overruling the demurrer.

Affirmed and remanded, with sixty days within which to file answer.

*Affirmed and remanded.*