Sun Oil Co. v. Allen et al.

(In Banc. Dec. 20, 1943.)

[16 So. (2d) 26. No. 35490.]

556

R. H. & J. H. Thompson and Fulton Thompson, all of Jackson, and J. W. Timmins, of Dallas, Tex., for appellant.

558

Alexander & Satterfield, of Jackson, and Berger & Gholson, of Port Gibson, for appellee.

See also 2 C. J. 1285-1286, Sec. 207.

Argued orally by **J. H. Thompson**, for appellant, and by **John C. Satterfield**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The relief sought and obtained by the appellees in the court below was the cancellation of an oil, gas and mineral lease as a cloud upon their title to approximately 1900 acres of land in Claiborne County. The ground alleged and testified to by them for the cancellation was that while the printed portion of the lease had originally provided for a ten year primary term, the appellee, L. Briscoe Allen, before he and his wife signed th instrument, took his fountain pen, which was filled with Shaeffer's green ink, and deleted the word "ten" in the printed form and interlined the word "five" above the same, and that thereafter, and before the recordation thereof, both the mark which had been made with ink through the printed word "ten" and the written word "five," which had been interlined as aforesaid, were completely eradicated by someone so as to cause the lease to again read for ten years as originally printed and prepared.

The lease in question was executed and delivered to one J. C. Vaughn, as lessee, and was thereafter transferred by him to the appellant, Sun Oil Company. In fact, the proof discloses that the same was obtained by Vaughn for that purpose. The purchase price was paid by the appellant, Sun Oil Company, on March 22, 1937, by taking up a draft for the sum of $199.80, drawn by Vaughn upon himself in favor of the lessors through a bank at Dallas, Texas.

The lease bears date of March 18, 1937, and it is claimed by the appellee, L. Briscoe Allen, that both he and his wife signed it on the same day that he received the draft from the lessee, bearing even date therewith, for the purchase price after having first deleted the word "ten" and interlined the word "five" as aforesaid, and that he brought such change to the attention of the lessee before it was signed by Mrs. Allen at her home during the noon hour, and delivered to the lessee in person in the afternoon.

The acknowledgments of the lessors were taken by the deputy chancery clerk on March 22, 1937, and the deputy testified that she procured both the signature and acknowledgment of Mr. Allen at his office, and that of Mrs. Allen at her home on that date; that when Mr. Allen signed the lease he also signed the typewritten rider which she had pasted thereon containing the description of the land; and that in affixing the two signatures thereto on that occasion he used his own fountain pen, whereas the original instrument shows that the signature to the lease is written with green ink, and the signature to the rider is signed with dark ink, the said lessor having testified that he signed the rider at his home when his wife signed the lease, and that they used the same pen and dark ink. She also testified that Mr. Allen, when signing the lease before her at his office, did not then delete the word "ten," and interline the word "five" therein, and that while Mr. Allen claims to have made the deletion and interlineation on a previous occasion when he received the draft from Vaughn, and delivered the lease to him in person, duly signed, she did not, on the occasion of taking the acknowledgments, see any such change appearing thereon. But we are of the opinion that the trial court was warranted in assuming that if such change had, in fact, been previously made it would have escaped her attention, for the reason that a good portion of the typewritten rider pasted thereon had overlapped the printed part, and obscured from her

view the entire paragraph of the printed matter where the change is alleged to have been made.

The deputy further testified that the lessee, Mr. Vaughn, prepared the lease for execution, employed her to procure the description of the land and paste the rider thereon, containing such description, and left the completed instrument with her in order that she could have it signed and acknowledged by Mr. and Mrs. Allen; that the said Vaughn left the instrument with her some three or four days before it was either signed or acknowledged, on account of the fact that he was called away to Brookhaven; and that she later mailed the executed lease to him there. She also testified, however, that she had no connection with the handling of the draft for the purchase price, and did not know when it was delivered to Mr. Allen. Under all of the circumstances testified to, we are of the opinion that the chancellor was warranted in finding that the deputy was mistaken about the lease being both signed and acknowledged before her, since it is not at all probable that the draft would have been delivered to the lessors some three or four days in advance of the signing and delivery of the lease, when it is considered that they were strangers to him, and were objecting to the proposed lease; and it is undisputed that the full purchase price was in fact paid for such length of time in advance of the date of the acknowledgments to enable the draft to be taken up and paid at Dallas, Texas, on the date of such acknowledgments at Port Gibson, in Mississippi.

The witness, Vaughn, denied on behalf of the appellant that the alteration had been made in the printed form of the lease either prior or subsequent to its execution, and corroborated the testimony of the deputy chancery clerk in regard to the lease having been left with her for the purpose of obtaining both the signatures and acknowledgments of the lessors. However, he likewise had no recollection as to when or how the draft for the purchase price got into the hands of Mr. Allen, one of the lessors.

The witness admitted, also, as testified to by Mr. Allen, that he had several interviews with said lessor before the latter would agree to execute the lease; that there was some objection interposed by Mr. Allen to signing the lease; and that it may have been an objection relating to the term during which it was to run, the said lessor having testified that he had positively refused to execute more than a five-year lease at three or four different interviews leading up to its final execution, and not until he had deleted the word "ten," and interlined the word "five" before the word "years."

The appellant introduced an expert of many years training and experience in examining questionable documents, who testified unequivocally that he was unable to detect by the use of various approved methods for doing so any sign of the printed form of the lease having been altered, and the alteration thereafter erased, as contended by the lessors, and he then undertook to demonstrate on other printed forms the deletion of certain words and the interlineation of others, and their complete eradication, so far as any detection with the natural eye was concerned, and then testified that by the use of a microscope, which has been sent up to this court for our use, he could then and there detect the fact of such alteration, due to the disturbance of the fibre of the paper. These specimens are before the court, and we are able to detect some of the admitted alterations and erasures, and some of them we are not able to detect under the microscope. Then, too, similar alterations, followed by the use of ink eradicator, were made by S. H. Bagnell, sheriff of the county, and in three instances the expert witness was able to detect that the alterations had been made on the printed forms used by Bagnell, and which were thereafter erased; and in three other instances he was unable to detect them, and was doubtful as to two others. And while it is true that these alterations and erasures had been recently made, and the expert testified that the fact of alteration could be more easily detected on the lease

involved in this suit, due to the period of time which has intervened, and especially when certain tests are used which he claims to have applied thereto, and which were not applied in his experiments before the court, nevertheless we are of the opinion that under all the facts and circumstances we would not be justified in reversing the finding of fact by the trial court, based on the conflicting testimony and other evidence before us.

Over the objection of the appellant, and under a reserved ruling, the appellee, Allen, was permitted by the trial court to recount certain conversations that he had with the lessee, Vaughn, prior to the execution of the lease, reciting the reasons as to why he knew and was able to recall that he did not agree to a term as long as ten years, and the admission of which testimony is assigned for error. The appellant cites 3 C. J. S., Alteration of Instruments, Sec. 91, subd. d, p. 1002, wherein it is stated that: ''Upon the issue of an alteration, declarations, conversations, and conduct of the parties bearing upon the subject are admissible in evidence; but on the issue of material alterations after execution evidence of conversations between the parties prior to its execution is inadmissible . . . and a defendant testifying that, when an instrument was executed, it did not contain a particular provision, cannot, for the purpose of showing how the fact was impressed upon his mind, testify as to a conversation between himself and another defendant in the absence of plaintiff.''

In support of the admissibility of such conversations when the issue is whether or not an instrument has been altered after its execution, the text cites the case of Smith v. Jagoe, 172 Mass. 538, 52 N. E. 1088, and other cases. And in support of the statement contained in the latter portion of the above text to the contrary, there is cited the case of Graham v. Middleby, 185 Mass. 349, 70 N. E. 416. In the latter case the court was discussing the inadmissibility of prior conversations had between the defendants as signers of the instrument in question at a time

when the plaintiff, as a party to the contract, was not present, and the case is, therefore, not authority for that part of the statement contained in the text which states that, ''on the issue of material alterations after execution evidence of conversations between the parties prior to its execution is inadmissible.'' On the other hand, it is said in 2 Am. Jur., sec. 113, p. 672, that ''it may be generally stated that, subject to certain established exceptions or rules of exclusion, all relevant circumstances tending to show the form of the instrument or the actual agreement as originally executed are admissible. . . . There would seem to be no question as to the admissibility of parol evidence to show an unauthorized alteration of a written instrument, the object of such evidence being, not to vary the terms of the instrument, but, on the contrary, to prove the terms thereof as originally executed. . . . Parol evidence is held to be admissible to show the original contents of a will which has been altered by a stranger. Consent to an alteration may also be proved by parol evidence.'' Moreover, it would seem that the signer of an instrument which has been altered after its execution, and where such alteration has been effectually concealed so far as its appearance is concerned, would be without remedy unless he could show all relevant circumstances bearing on the actual agreement as originally executed in support of his claim that the same has been altered.

Certain letters written by the appellee, Mr. Allen, to the appellant, containing self serving statements, subsequent to the discovery on the county records by the appellees of the alleged alteration, were also admitted in evidence, over the objection of appellant, and under a reserve ruling of the trial court; but the appellant failed to obtain a ruling on the objection thereto prior to the rendition of the final decree here appealed from. We cannot, therefore, assume that the evidence objected to was considered by the chancellor if the same was in fact incompetent. We must assume that the decree was based upon competent

evidence only, unless the contrary is affirmatively disclosed by the record.

The lease having expired within five years from the date of its execution, the decree of the court below in cancelling the remainder of the alleged term thereof as a cloud upon the title of the appellees must, therefore, be affirmed.

Affirmed.

**Alexander, J.,** took no part in this decision.