JONES *et al. v.* CRAWFORD *et al.*

(Division B. April 21, 1947. Suggestion of Error Overruled May 19, 1947.)

[30 So. (2d) 57. No. 36425.]

792

[30 So. (2d) 513.

Satterfield, Ewing & Hedgpeth and Dan H. Shell, all of Jackson, for appellants.

James D. Thames, of Vicksburg, for appellees.

**Alexander, J.,** delivered the opinion of the court.

Bill was filed by Mrs. Jones and her children for partition of lands known as the Pecan Grove Plantation in Claiborne County, and for the fixing of a lien thereon to secure payment of any amounts of rent or other gains to be revealed by an accounting.

The lands were bought by J. J. Jones and J. F. Crawford in 1920. In 1922, grantees procured a loan secured by deed of trust thereon in favor of the Federal Land Bank. In 1925, Mr. Jones died intestate, his heirs being the appellants.

In July 1927, there was a sale by Mrs. Jones, as guardian of her three children, to Mrs. J. F. Crawford. The undivided one-eighth interest of each of such wards was conveyed, subject to the outstanding indebtedness, for and in consideration of the payment of $100 to each. In 1937, Mrs. Jones conveyed her interest to Mrs. Crawford. On January 24, 1938, Mrs. Crawford conveyed the entire interest, still subject to the said indebtedness, to her son-in-law, A. L. Arnold, Jr., one of the appellees.

The bill attacked the validity of the guardian's sale. It also sought to establish a resulting trust in complainants' favor arising out of the sales to Mrs. Crawford and the sale by her to Arnold.

There were irregularities in the guardian's sale which, if seasonably asserted, may have avoided it. The decree of the chancellor, which is sufficiently supported by the record, must be held to imply a finding that Mrs. Crawford paid the required consideration and that the sale was in good faith. Since the youngest of the wards became of age more than two years before suit was filed, the bar of Code 1942, Sec. 745, is complete. They are not, therefore, in a position either to attack the validity of this sale or to claim a resulting trust therefrom. Although there was some testimony that the value of the lands was in excess of the amount paid by Mrs. Crawford, such amount was that represented by the guardian in her petition as fair, and there is no such disparity as subjects the sale to suspicion of fraud.

Both the sales to Mrs. Crawford were induced by the common anxiety that the lands might be lost through the inability to make payments of taxes, interest and principal installments upon the loan. The lands were not being, and had not been, profitably operated. Also, both sales were in their outset contemplated to be effected to grantees other than Mrs. Crawford. Yet, in both cases the proposed grantees would not or did not take the property, and the sales to Mrs. Crawford were upon the same terms proposed respectively in each case. The sale by Mrs.

Jones of her interest was to be upon the consideration that the prospective grantee would relieve her of any responsibility for the upkeep of the place and for payment of the existing loan. This, Mrs. Crawford did. Under her subsequent sale to Arnold, he informally assumed, and has made, all payments due thereon, and has expended considerable sums in maintenance and development.

A resulting trust transforms a prior intention of the parties into an obligation by the grantee to hold and deal with the land in recognition thereof. Here, there was no resulting trust since all parties deemed the lands, with its existing loan, a liability, and the assumption of such obligation by the grantee was not only benficial to the grantor but was in compliance with such intention.

On February 25, 1927, Mrs. Jones executed an instrument acknowledging her inability to bear any part of the expense of maintenance of the lands, and authorized Dr. Crawford, who held an undivided one-half interest, to use all income from the operations to reimburse himself for his outlays. We do not find this authorization significant except as an acknowledgment that the lands were a mere liability so far as she was concerned. Despite frequent divergencies as to other details, all of the appellants were unanimous in subscribing to the popular appraisement of the plantation as a "white elephant." The implication that if and when the place should emerge from the doldrums of debt, her one-eighth interest would be restored to her untrammeled ownership, is likewise made incidental by her conveyance to Mrs. Crawford in 1937 in consideration of an acquittance of the grantor of further responsibility.

The chancellor was justified in finding no bad faith upon the part of Mrs. Crawford who is shown to have repeatedly offered the property to appellants or to any one who would assume its outstanding obligations. Her zeal to disencumber herself of the over-burdened lands is measured by her offer, made repeatedly to appellants and

others, to pay a bonus of $3,000 to any one who would assume the role and responsibility of a grantee. This offer was finally accepted by Arnold who sold out his holdings in Kentucky, moved upon the place, and has assumed and met its obligations.

Arnold bought the lands January 24, 1938. In April of that year, he wrote Mrs. Jones concerning the Federal Land Bank stock which is an adjunct of its loan contracts. With his letter he enclosed a copy of Mrs. Jones' instrument dated February 25, 1927, authorizing Dr. Crawford to utilize the entire income to pay expenses. We do not find in this act an enforceable obligation to reconvey to Mrs. Jones a one-eighth interest or to hold same in trust. This too, in spite of his assertion in his letter that "I can assure you that it will be carried out." If this is an agreement, which we do not decide, it was several months after he had been conveyed the land by Mrs. Crawford, and was, moreover, without consideration.

The case furnishes materials for plausible contentions by both sides of the controversy, and we are unable to justify overturning the decree of the chancellor. Nor are we vexed by any reservations that the decree must be upheld despite probable injustice, for adjudged as of the date of the several conveyances each transaction represented a consummation then devoutly wished by those who now have found reason to question anew their erstwhile judgment.

Affirmed.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

It is earnestly urged on the suggestion of error that the guardian's sale of the three-eighths interest of the minors in 1927 was for a grossly inadequate consideration and, therefore, was not in good faith, so as to fall within the protection of Section 745, Code 1942, and it is said that the evidence to that effect is undisputed.

They say that it is undisputed that the guardian's sale was made in view of an offer made by a woman in Florida of $2,000 and some lots in Florida plus the assumption of the mortgage. It is not shown that this was worth anything as a binding offer, or that it was anything more than a prospect—a prospect which did immediately dissolve into thin air, and which if of any weight on the question of value was of little weight.

On the other hand, Mr. Gage, the executive vice-president of the Port Gibson Bank, whose testimony shows him to have had a close knowledge of financial and market conditions in that immediate territory throughout the years covering all these transactions, and whose successful management of that bank during the distressing periods involved demonstrates his trustworthiness on such questions, testified that Pecan Grove Plantation was not worth in 1927 any more than the $10,000 mortgage then resting upon it. The guardian had, in substance, so stated in her sworn petition for the sale. And the fact that the minors' said interest was sold at public auction and no bid was made above the amount for which the sale was made, is to be taken into consideration; wherefore the chancellor had such evidence before him as renders it beyond our reach to say that he was manifestly wrong in his decree, and this in spite of the fact that there was testimony to the contrary.

Moreover, the case on its full facts justifies the application against appellants of the doctrine of equitable estoppel, for the reason that although appellee Arnold moved upon the property in 1941 and thereupon and since has made large expenditures amounting to more than $15,000 in improvements and betterments out of his own funds and beyond funds obtained from the property itself, and although appellants were in 1941 of full age, and knew or had information of facts equivalent to knowledge that Arnold was acting in what he did as owner, under an unbroken chain of apparent title, they stood silently by throughout more than three years, and

until 1945 when, for the first time, they asserted their claim in pais by their present bill of complaint. See Kelso v. Robinson, 172 Miss. 828, 829, 161 So. 135, and the long line of cases cited therein.

Suggestion of error overruled.