PEELER et al. v. HUTSON.

(In Banc. December 8, 1947.)

[32 So. (2d) 785. No. 36594.]

Morgan & Thornton, of Kosciusko, for appellant.

A. M. Warwick, of Carthage, for appellees.

**L. A. Smith, Sr.,** delivered the opinion of the court.

Suit was filed in the Chancery Court of Leake County on December 14, 1945, by appellee against appellants for a partition of 985 acres of land in Leake County; cancellation of a trust deed thereon executed by appellant, Ernest Peeler, so far as it affected the interest of appellee; and for an accounting of the rents and profits from the lands sought to be partitioned.

Appellee claimed to own an undivided one-twenty-seventh interest in the property as an heir at law of his deceased wife, Mrs. Katherine Sevier Hutson, who departed this life intestate in 1930. He averred in his original bill that appellant Peeler was the owner of the remaining twenty-six-twenty-sevenths interest in the land.

The trust deed was executed by appellant Peeler to appellant Bailey, as trustee for a bank, and embraced all of the entire acreage as security of Peeler's debt to the bank. At the time suit was filed, Peeler had been in possession of the entire premises for several years.

This land originally belonged to Henry C. Sevier, who was the father of Mrs. Katherine Sevier Hutson, the deceased wife of appellee, F. H. Hutson. She was alive at the time of her father's death intestate. Henry C. Sevier was survived by nine heirs at law, each, therefore, owning an undivided one-ninth interest in the lands. When Mrs. Katherine Sevier Hutson died without a will, in 1930, she was survived by her husband, appellee, and two

children, F. S. Hutson, a son, and Mrs. Katherine Hutson Blount, a daughter, so that under the law of descent and distribution of Mississippi, appellee, F. H. Hutson the widower and father of the two children named and each of the children inherited together the one-ninth interest Mrs. Katherine Sevier Hutson owned at her death or a one-twenty-seventh each. The place remained unproductive and apparently neglected by all concerned for several years. There was some difficulty in raising the total amount of taxes. This was particularly true of the one-ninth interest owned by appellee and his two children.

On January 6, 1932, Henry C. Sevier, a grandson and namesake of the common source of the title, the original owner of the land, addressed a letter to his cousins, children of appellee, Fulton Hutson and Mrs. Katherine Hutson Blount, calling their attention to the fact that the taxes of 1932 were in arrears. This letter contained this paragraph: ''The aggregate amount of the taxes for that year is $751.58. As you know, there are nine interested in this property, your interest being one-ninth of that amount, or $83.51.'' Mr. Sevier was a member of the bar in Louisiana, where the law of descent and distribution, unlike that of Mississippi, did not permit a husband to inherit a child's share in the estate of a deceased, intestate wife, and evidently he was not aware of the fact that in Mississippi, the appellee, as the surviving husband, inherited from his deceased, intestate wife an equal share with their two surviving children, so that the one-ninth interest of which Mr. Sevier wrote as belonging to Fulton Hutson and Mrs. Katherine Hutson Blount above was actually the property of all three, and each of them owned only a one-twenty-seventh thereof. Appellee, although he read the letter and answered it for his children, did not correct this palpable mistake on the part of Mr. Sevier, or undertake to inform him of the truth as to the ownership. Neither did appellee say anything whatever about the payment of his portion of the entire tax, although he must have known from the whole

tenor of the letter that payment of the tax on all shares was sought.

Instead, appellee wrote this letter in reply to Mr. Sevier:

"Replying to yours to Fulton & Katherine which just came to me and wish to say that they have not been able to get the money to pay their taxes hereon their property, and as to the taxes on the property referred to in your letter, will say that the legislature has given three years to redeem property sold in the state with one half of one per cent damages only up until the property is advertised for sale that is at the rate of six per cent per year.

"It seems to me that the business view of the matter would be to let the taxes ride as that is much cheaper than you can borrow money to pay taxes with, and this does not affect the title of the property for three years of course all property sold for taxes would have to be taken care of before the three years expired, you possibly know about this but I am calling your attention to this as it seems good business."

Mr. Sevier answered, rejecting the proposal to permit the place to be sold for taxes and later redeemed, as suggested by appellee. In this reply was written the following:

". . . If Fulton and Katherine are unable, as you state they are to raise this amount, I am willing to pay this for them provided they will agree to give me a mortgage for the $190.80 heretofore paid by Uncle Will, plus the $83.51 for last year's taxes, bearing 8% interest on the respective amounts since they were paid, or I will pay Uncle Will for what he has paid an pay the taxes for last year and give Katherine and Fulton $700.00 for their interest in the property. Please advise me by return mail relative to this matter in order that I may know what to do before February 1st."

Here again, although he was a business man and is bound to have known that Mr. Sevier was not interested

in clearing only two-twenty-sevenths of the three-twenty-seventh interest he and his children owned, and that he was under a misapprehension as to the true situation, and although Mr. Sevier asked him "to advise him by return mail relative to this matter," still appellee did not mention that clearing up the interests of his children would still leave his share in default of taxes, or make any reference to that phase of the situation. In fact, he did not, at any time, advise his correspondent anything whatever as to his own status in the matter. However, he did reply as follows, under date of January 28, 1932:

"Replying to your letter of the 27th, please prepare the deed for Katherine and Fulton to sign and mail it to *us* with check for Seven Hundred, or mail the deed at once and *we* will bring the deed over to you and you can then give *us* check." The italics are ours.

In answer, Mr. Sevier wrote:

"I am handing you herewith a deed which I have prepared, covering the interest of Catherine and Fulton in the old Sevier property in Leake County, as per your letter of the 28th instant.

"If you will have Catherine and Fulton to sign this document on the first two lines and then again before a Notary and return the same to the Tallulah State Bank & Trust Company of Tallulah, La., duly executed, with instructions to the bank to deliver the deed to me upon my paying to the bank for Fulton and Catherine's account the sum of $700.00, or $350.00 to each, the matter will be promptly attended to."

The letter was addressed to "Mr. F. H. Hutson, Sr., Isola, Miss.," his usual postoffice address, and there is no proof in the record of an absence from his home for any appreciable period along about that time. He received all the other letters, but does not remember to have read this deed. This deed, significantly enough, contained this very definite language, "We are the sole heirs of Katherine Sevier, deceased," and also "Each one's interest is an undivided one-eighteenth interest

but all our interest is hereby conveyed whatever it may be.'' This deed was duly executed by Mrs. Katherine Hutson Blount and Fulton S. Hutson. Appellee even then did not call the attention of Mr. Sevier that thereby he was not succeeding in purhasing the entire one-ninth interest of Mrs. Katherine Sevier Hutson, deceased, in her father's plantation, but was obtaining only two-thirds of it. The consideration for the deed was obviously paid by Mr. Henry C. Sevier while under the impression he was purchasing all of the interest of Mrs. Katherine Sevier Hutson in her father's plantation. It does not appear that appellee received any part of the money paid for the deed.

Five years later Henry C. Sevier and all the others owning any interest in this Sevier place jointly, except appellee who did not sign and was not asked to sign, signed a deed purporting to convey the entire property to S. J. Peeler. All parties to this transaction, which was a warranty deed without exception or reservation, manifestly were under the impression that the entire interest of every owner was being conveyed to the grantee. This deed was duly recorded. The plantation was ultimately acquired by appellant, Ernest Peeler, who encumbered it as aforesaid.

The Chancellor's opinion set out that, on December 12, 1945, ''more than ten years after the delivery to Sevier of the deed from the Hutson children, but less than ten years after the deed to S. J. Peeler, F. H. Hutson filed this bill to enforce his claim to a 1/27 interest in the lands, for a partition, and for an accounting.'' To this suit, appellants urged several defenses—estoppel, laches, limitation of actions, and adverse possession. By its final decree the Chancery Court declared appellee, F. H. Hutson, to be the owner in fee simple of an undivided one-twenty-seventh interest in the lands, and a cotenant with appellant, Ernest Peeler, and entitled to an accounting; cancelled the trust deed by Ernest Peeler as a cloud on the title of appellee, so far as it affected same; and

reserved the accounting until this Court passed upon the decree.

We have concluded that the decree of the chancery court must be reversed and decree entered here for appellant, on the ground of estoppel, and it is, therefore, unnecessary to discuss any other feature of the case. As pointed out in the chancellor's opinion, it is stated in Pameroy's Equity Jurisprudence, 5th Ed. 1941, vol. 3, p. 190, Section 805, that estoppel must contain the following essential elements: Conduct and acts, language or silence, all amounting to representation or concealment of material facts. Furthermore, the facts must be known to the party estopped at the time of his conduct, or the circumstances must be such that knowledge of them is necessarily imputed to him, and their truth then unknown to the other party. The acts must be done with the intention of the expectation that the other party would act upon it, or under such circumstances that it would be both natural and probable that he would do so; and reliance and action must be had upon it by the opposite party to his hurt.

Here, we have the silence of Mr. F. H. Hutson when he should have spoken; when he actually knew the truth and Mr. Sevier did not, in the negotiations leading to the ultimate conveyance from his children, and in which he actively participated. We think, too, that the circumstances surrounding the final mailing of the deed to appellee is such a circumstance, coupled with what preceded it, as reasonably imputed to Mr. Hutson knowledge of its contents. And, it appears manifest that Mr. Hutson intended for Mr. Sevier to act as he did, relying upon the impression that the one-ninth interest of Mrs. Hutson belonged solely to his children, since he permitted Mr. Sevier to remain deceived as to that fact. Furthermore, there is no escaping the demonstrated fact that Mr. Sevier did act in reliance upon this false premise and to his hurt, in that he failed to get all of that for which he was paying.

The incidental circumstance that the mistake originally arose from the erroneous idea of Mr. Sevier that the law of descent and distribution in Louisiana and Mississippi was the same, does not alter the final, factual effect, arising out of the inequitable conduct of appellee. In Louisana, the one-ninth interest would have descended alone to the children of Mrs. Katherine Sevier Hutson. In Mississippi, it descended to her surviving husband and children. ''The doctrine is settled that in general a mistake of law, pure and simple, is not adequate ground for relief. . . . If the mistake of law is not pure and simple, but is induced or accompanied by other special features, giving rise to an independent equity on behalf of the mistaken party, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid.'' 2 Pomeroy Eq. Jur., 4th Ed., Sec. 842; Baker v. Hardy et al., 194 Miss. 662, 11 So. (2d) 803.

Since appellee Hutson actively participated in the fraud upon Mr. Sevier, who had the right to rely on his acting in good faith, with candor and good conscience, in the interest of fairness and in view of their relationship and apparent feelings of reciprocal regard, we do not think that under such circumstances, Roberts v. Bookout, 162 Miss. 676, 139 So. 175, and Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363, are in point here.

The rules of estoppel governing in this case are found in 19 Am. Jur. Secs. 129, 130, in the chapter on Estoppel. In Section 129, it is written that: ''A strong case of estoppel is made out when, by conduct or representation, an owner encourages another to believe that a third person is the owner of land and thereby induces him to purchase or take a mortgage on the property or to credit or otherwise favor such third person on the strength of such supposed ownership. Encouragement or instigation to consummate a transaction has been recognized as an important element upon which to predicate an estoppel in cases

involving transactions affecting ownership." In the case at bar, attention is called here to the letter from appellee to Mr. Sevier suggesting the deed, and also how the delivery should be affected, and the consideration paid.

Section 130, supra, lays down this equitable rule, applicable to the situation here, "Estoppel arising from participation in a transaction by assisting in consummating it in addition to silence as to an interest held therein has been predicated where the following elements were included among the facts presented before the court: (1) That the party held to be estopped had procured a conveyance of the land in question to be made to the party setting up the estoppel; (2) that he had taken an active part in the negotiations which led to a sale of the land; (3) that he had assisted the owner of the land in completing the sale; . . ."

We are, therefore, of the opinion that the learned Chancellor was in error in holding that appellee is not estopped to bring this suit. In our judgment the original bill should have been dismissed, and it will be dismissed here, and the decree of the chancery court reversed, and decree entered here for appellants. Reversed and decree here for appellants.

### CONCURRING OPINION.

**McGehee, J.**, delivered a specially concurring opinion.

I concur in the decision that the appellee Hutson is estopped by his conduct from claiming his inherited interest in the land in question, even though he has not conveyed the same by any instrument of writing; but I think that it should be noted that the decision in the present case is in direct conflict with that in the case of Gulf Refining Co. v. Travis, 201 Miss. 336, 29 So. (2d) 100, and especially with the decision on suggestion of error in that case, 201 Miss. 336, 30 So. (2d) 398, both as to what constitutes an estoppel and as to what is re-

quired under the statute of frauds in order for one to become divested of an interest in realty. But I am glad that the doctrine of estoppel is being revived and applied in this case and that the Travis case is being departed from, since it was not in accord with our previous decisions on what constitutes an estoppel, if the facts therein are to be considered. And I do not mean by this that I think the statute of frauds should have had anything to do with the decision in the Travis case, or that it has any application in the case at bar.