MARTIN *v.* HARTLEY et ux.

In Banc. Jan. 23, 1950.

No. 37320 (43 So. (2d) 875)

J. W. Backstrom, Ben H. Walley and Heidelberg & Roberts, for appellant.

.. **W. M. Hutto** and **E. C. Fishel,** for appellees and cross-appellants.

118

**Lee, J.**

Appellees, J. K. Hartley and wife, Ellen Hartley, instituted this suit against appellant, J. C. Martin, Sr., to cancel a lease contract on certain land described in the bill, and to recover damages for the improper use thereof. Alternately they prayed also for reformation. The lower

court declined to cancel the lease or to reform the same, but found that the "still lot" and the garden spot were excluded from the contract, and allowed damages in the sum of $50. Neither side was satisfied with the result. Hence, a direct appeal by the appellant, and a cross-appeal by the appellee.

A demurrer was sustained to the original bill. Thereupon it was amended, and an answer and other general and special demurrers were filed. These demurrers were overruled, and the court proceeded to a trial of the merits with the above stated results.

The issue was clear cut, and the substantial facts were as follows: During the month of October 1944, the appellees were property owners in the town of State Line. Appellant was in the sawmill business, and desired to lease from the appellees a site on which to locate a mill, yard, etc. Hartley and Martin went upon the land, viewed the same and agreed upon the terms. Subsequently, Martin prepared the lease contract himself, using, as he claimed, the description which was given him by Hartley, and mailed the instrument to Hartley for signature and acknowledgment by himself and wife. Thereafter the instrument, acknowledged December 11, 1944, was received by Martin. The sawmill was installed and full operations were commenced. There was no friction of any kind between the parties. A large portion of the property was used by the appellant in connection with the business for about a year and a half without objection or protest from the appellees—their residence was situated nearby, and they could see and observe what was going on. Finally appellant was about to move one of his employees into a house on this land, when Hartley went to him and protested that the employee was undesirable. Up to this point, there is no substantial dispute. Nothing had marred the apparent satisfactory relations between the parties.

During the conversation about the undesirable employee, Hartley charged that Martin had encroached on the "still lot", which was reserved; that he had expressly written this into the lease before signing, and asked to see the lease. Martin said he was unable to locate it— it was Saturday, a payday—but that he would find it and let him see it the next week. Thereupon Hartley procured counsel and instituted this proceeding. It might be stated, in passing, that the alleged undesirable employee did not move.

The evidence for the appellees tended to show that when the lease was received, there was no reservation of the "still lot"—a lot on which a turpentine still was located; that before acknowledging, Hartley wrote on the margin where the description began with pencil, "still lot reserved"; that the pencil writing was erased; that "100 feet x 100 feet still lot reserved" was written with typewriter in lieu thereof, without the knowledge or consent of appellees; that the "still lot" was actually 200 by 272 feet; that this type was heavier than that in the body of the description. In other words, the instrument had been deliberately altered after its execution.

The evidence for the appellant was to the effect that he had written the lease himself; that, after writing the description, he observed that he had left out the reservation of the "still lot", which was agreed between them to be 100 feet by 100 feet; that he then put the paper back into the typewriter, and made the change before sending it to Hartley; that when he received the acknowledged instrument, with "still lot reserved" in pencil, he saw Hartley on the street in Waynesboro, told him about it, and asked him to erase; that he sent the paper through the mail to Hartley for this purpose, and also, because it was in the wrong section, and in a week or two, it came back to him through the mail, with the pencil writing erased. In other words, appellant had made no altera-

tion at all, and that the erasure of the pencil writing had been done by appellees.

On this issue of fact, the learned chancellor was warranted in finding that the appellant had altered the instrument. He heard the witnesses, observed their demeanor on the stand, and saw the original instrument itself. ▮▮ It is elemental that this Court will not reverse a chancellor on a finding of fact, where such finding is sustained by substantial evidence. Certainly it cannot be stated that he was manifestly wrong.

The complaint of appellees, also cross-appellants, is that, since the court found that the appellant, also cross-appellee, had made a material alteration in the contract, the same should have been cancelled. To this end, they cite a number of cases, including Merchants' & Farmers' Bank v. Dent et al., 102 Miss. 455, 59 So. 805; Bank of Lauderdale et al. v. Cole et al., 111 Miss. 39, 71 So. 260; J. R. Watkins Co. v. Fornea et al., 135 Miss. 690, 100 So. 185; and Sun Oil Co. v. Allen et. al., 195 Miss. 555, 16 So. (2d) 26.

In those cases, the aggrieved parties knew nothing of the alteration, as here, but, in addition, did nothing to evidence acquiescence in the result of the alteration. On the contrary, they acted timely. ▮▮ In the case here, appellees stood by for a year and a half without objection or protest and permitted Martin to occupy, use, enjoy the benefits of this parcel of land, and make a large investment thereon, as though he had the legal right thereto. But for the friction over moving the alleged disagreeable employee, we are justified in believing that this contract would not have been questioned. They must, therefore, be held to have acquiesced, and thereby consented to such use of this land. To direct the cancellation of the contract, under such circumstances, would be in conflict with the well known principles of equitable estoppel. See 19 American Jurisprudence, 678, as follows:

"  . . . The rule is well recognized that where a party with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts remains inactive for a considerable time or abstains from impeaching a contract or transaction, or freely does what amounts to a recognition thereof as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relation and situation of the parties, so that the other party is induced to suppose that it is recognized, this amounts to an acquiescence and the transaction, although originally impeachable, becomes unimpeachable."

Compare Kelso v. Robinson, 172 Miss. 828, 161 So. 135, 137, where it is said: "Estoppel may arise from misleading silence or passive conduct joined with a duty to speak. The doctrine lies at the foundation of morals; it is based on equity and good conscience. . . ."

Of like effect are Jones et al. v. Crawford et al., 201 Miss. 791, 30 So. (2d) 57, 513, 514; and Peeler et al. v. Hutson, 202 Miss. 837, 32 So. (2d) 785. See also 31 C. J. S. Estoppel, Section 59, page 239.

Manifestly, the court was right in refusing to reform the lease. Appellees read the description, and had no objection to any part thereof, except the omission of the reservation of the "still lot". After attempting to exclude that lot, they signed the contract. They knew what they were doing. Besides, the description was ambiguous, and the proof was vague and indefinite. The court held that the proof was insufficient to decree the reformation, and we think he should be sustained thereon.

Neither by contract nor otherwise was the appellant authorized to damage or destroy property; hence, no fault is found with that part of the decree allowing damages to the garden fence, etc.

It follows that the case should be, and is, affirmed on both direct and cross-appeals.

Affirmed on both direct and cross-appeals.